Laura Davis Jones (*pro hac vice* pending)
Steven W. Golden
Mary F. Caloway (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile:  212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CANACOL ENERGY LTD.,[1] *et al.*<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25- 12572<br><br>(Joint Administration Requested) |

**DECLARATION OF RAJ S. SAHNI IN SUPPORT OF (I) VERIFIED CHAPTER 15 PETITIONS, (II) FOREIGN REPRESENTATIVE'S MOTIONS FOR ORDERS GRANTING PROVISIONAL RELIEF AND FINAL RELIEF IN AID OF CANADIAN PROCEEDING, AND (III) CERTAIN RELATED RELIEF**

I, Raj S. Sahni, to the best of my information and belief, state as follows:

1. I submit this declaration (this "Declaration") in support of the (a) *Motion for Provisional Relief in Aid of Canadian Proceeding Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion") and (b) *Motion for (I) Recognition of Foreign Main Proceeding (or, in the Alternative, Foreign Nonmain Proceeding), (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the

---

[1] The Debtors, along with the last four digits of each Debtor's unique identifier, as applicable, are as follows: Canacol Energy Ltd. (2074); Cantana Energy GmbH (8873); CNE Oil & Gas S.R.L. (9803); Canacol Energy ULC (0350); Shona Holding GmbH (2126); Canacol Energy Colombia S.A.S. (5633); CNE Energy S.A.S (0691); CNE Oil & Gas S.A.S. (6580); 2498003 Alberta ULC (4611); and 2654044 Alberta Ltd. (3429).  The Foreign Representative's service address for purposes of these Chapter 15 Cases is c/o KPMG Inc., Bay Adelaide Centre, Suite 4600 333 Bay Street, Toronto, Ontario, Canada M5H 2S5.

"Recognition Motion" and, together with the Provisional Relief Motion, the "Motions")[2] filed by KPMG Inc. ("KPMG"), the court-appointed monitor (in such capacity, the "Monitor") and authorized foreign representative (in such capacity, the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), which are the subject of jointly-administered proceedings (the "Canadian Proceeding") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA"), before the Court of King's Bench of Alberta (the "Canadian Court"). Concurrently herewith, the Foreign Representative has filed voluntary petitions for relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") for each of the Debtors. All facts set forth in this Declaration are based on: (a) my knowledge; (b) my review of relevant documents; and/or (c) my opinion based upon my experience and knowledge of the Debtors' operations. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. I am a partner in the law firm of Bennett Jones LLP ("Bennett Jones"), 3400 One First Canadian Place, Toronto, Ontario, Canada M5X 1A4, where my broad-ranging practice focuses on restructuring and insolvency matters. Bennett Jones acts as Canadian counsel to the Canadian Court-appointed Monitor in the Canadian Proceeding. I graduated from the University of Toronto with a BA with honours in 1995 and a JD in 1998. I was admitted to the Ontario Bar in 2000. I have experience acting for debtor corporations and large corporate groups, lenders, bondholders and other creditors, court appointed officers (*e.g.*, CCAA monitors), investors, and acquirers in insolvency and restructuring proceedings. Over the course of my career, I have been involved in numerous proceedings under the CCAA, as well as proceedings under federal and provincial corporate and/or insolvency legislation.

---

[2] For the avoidance of doubt, capitalized terms used but not defined herein shall have the meaning given to them in the Motions.

**I.     CCAA PROCEEDINGS**

      **A.     Overview of CCAA Restructuring Process**

3.     The CCAA process begins when a company files an initial application—often on an *ex parte* basis—in the court in the jurisdiction where the company's headquarters or principal place of business is situated for protection under the CCAA. The initial application must, *inter alia*, be accompanied by: (a) projected weekly cash flow statements; (b) a report from the company regarding the preparation of the cash-flow statements; and (c) copies of audited or unaudited financial statements prepared during the year prior to the application or, if no such statements were prepared in that year, a copy of the most recent such statement. *See* CCAA at 10(2).

4.     Upon the filing of the initial application, the court may enter an order staying all proceedings and actions against the company and its property as well as against its directors and officers for an initial period that does not exceed 10 days. *See* CCAA at 11.02(1). This period may subsequently, from time to time, be extended by the CCAA court for such period of time as the CCAA court deems appropriate in the context of the company's restructuring process.

5.     Once the court enters an initial order approving the initial application, the court will at the same time appoint a licensed insolvency trustee to serve as a "monitor" of the business and financial affairs of the company.[3]

6.     The Initial CCAA Order and the Amended and Restated Initial CCAA Order may also include, among other things, (a) authority to disclaim certain contracts; (b) a prohibition on the payment of prefiling obligations, subject to certain permitted exceptions; (c) authority to pay

---

[3]     A monitor is an independent third party who is appointed by the court to, among other things, monitor the company's ongoing operations. The monitor's duties include, monitoring the business and reporting to the court on any major events that might impact the viability of the company. The monitor will also prepare a report on any sale transaction involving an insolvent debtor's assets conducted out of the ordinary course and on any plan of arrangement advising the court on the reasonableness of such step.

any outstanding wages, salaries, employee and pension benefits, as well as other entitlements and expenses; (d) authority to pay certain taxes; and (e) a prohibition on sales over a certain monetary threshold outside the ordinary course of business without court approval. *See* CCAA at 11.09(2).

7. Prior to 2009, there was an on-going debate over whether creditor protection under the CCAA was appropriate to allow for an orderly liquidation of a debtor company. In 2009, the CCAA was amended to include, *inter alia*, statutory rights in favor of debtor companies to sell their assets outside of the ordinary course of business and outside of a CCAA plan. Accordingly, since then, Canadian courts have come to accept that the business and assets of an insolvent company can be sold under the CCAA free and clear of any lien, security, charge, or other restriction, without the need to file a CCAA plan. The CCAA now allows a debtor to dispose of all or substantially all of its assets outside of the ordinary course of business without the formal approval of its creditors, provided it obtains prior authorization from the court. In deciding whether to authorize the proposed sale of assets, the CCAA stipulates that the CCAA court is to consider, among other things:

    a. whether the process leading to the proposed sale or disposition was reasonable under the circumstances;

    b. whether the CCAA monitor has approved the process leading to the proposed sale or disposition;

    c. whether the CCAA monitor filed with the CCAA court a report stating that in its opinion, the sale or disposition would be more beneficial to the creditors than a sale or disposition under a bankruptcy;

    d. the extent to which the creditors were consulted;

    e. the effects of the proposed sale or disposition on the creditors and other interested parties; and

    f. whether the consideration to be received for the assets is reasonable and fair, taking into account their market value.

8. These criteria are largely based on the principles which were previously enunciated by the Ontario Court of Appeal in the *Soundair* matter,[4] in which the court listed the following non-exhaustive criteria to examine in order to determine whether a sale of assets of an insolvent debtor should be approved:

   a. whether sufficient effort has been made to obtain the best price and that the debtor has not acted improvidently;

   b. the interests of all parties;

   c. the efficacy and integrity of the process by which offers have been obtained; and

   d. whether there has been unfairness in the working out of the process.

9. If the required test is met, the court will typically issue an approval and vesting order authorizing the transfer of the assets on a free and clear basis (other than assumed/permitted encumbrances). The order will also provide that creditor claims will have the same priority against the proceeds of the transaction that they had against the assets, prior to the sale.

10. It should be noted that court authorization will be granted only if the CCAA court is satisfied that the company can and will pay for any unpaid wages or pension plan contributions that would have been required if the court had approved a proposal or a plan of arrangement and compromise, as applicable. It should also be noted that if the sale transaction ultimately presented to the court for approval is with a related party, certain additional requirements must be met.

11. While, as mentioned, the sale of assets of a debtor company does not require the formal approval of its creditors, the CCAA requires that a notice of motion to the CCAA court for the approval of the sale or disposition of assets be given by the debtor to all of its secured creditors who are likely to be affected by the proposed sale or disposition. Likewise, and as discussed below,

---

[4] *Royal Bank of Canada v. Soundair Corp.* (1991), 4 O.R. (3d) 1 (C.A.).

4931-1534-4762.3 50180.00001

5

the Debtors intend to seek CCAA court approval of the procedures that will govern the Sale Process (as defined below).

13. In a CCAA proceeding, a debtor is able to obtain postpetition financing (*i.e.*, DIP financing), subject to a hearing and court approval, after showing that the proposed financing is in the best interests of the debtor. *See* CCAA at 11.2. Such borrowings would typically have priority status in the CCAA proceeding and, if unsecured financing is unavailable, the debtor is permitted to borrow on a secured basis. *See* CCAA at 11(2). Debtors have been able to obtain court approval of such postpetition financing on the basis of a term sheet. *See, e.g., U.S. Steel Canada Inc., Re*, 2014 ONSC 6145 (¶¶ 4 and 18); *In the Matter of a Plan of Arrangement of the UrtheCast Corp.*, 2020 BCSC 2012 (¶ 25). The court may approve priority charges against the company's assets in respect of such financing, which may take priority over existing secured creditors, where notice of the charge approval hearing is given to the potentially affected creditors and the court is of the opinion that such charges are appropriate in the circumstances. *See* CCAA at 11.2(1).

B. **Commencement and Overview of CCAA Restructuring Proceedings**

13. On November 17, 2025, each of the Debtors filed with the Canadian Court the necessary materials in support of an application to commence the Canadian Proceeding pursuant to the CCAA. On November 18, 2025, the Canadian Court entered an initial order (the "Initial CCAA Order"). A true and correct copy of the Initial CCAA Order is attached hereto as Exhibit 1.

14. The Initial CCAA Order includes a "no default" provision. More specifically paragraph 17 of the Initial CCAA Order provides as follows:

> During the Stay Period, no person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the applicable Applicant and the

Monitor, or leave of this Court.[5]

15. In addition, the Initial CCAA Order expressly requests that courts in the United States recognize the Canadian Proceeding to aid and assist the Canadian Court in carrying out the terms of the Initial CCAA Order:

> This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in any foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.
>
> Each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and that the Monitor is authorized and empowered to act as foreign representative in respect of the within proceeding for the purpose of having these proceedings recognized in a jurisdiction outside Canada.[6]

16. I believe recognition of the Canadian Proceeding will not undermine the rights that United States creditors typically enjoy in a chapter 11 proceeding, as affected creditors will have the opportunity to the participate in the Canadian Proceeding under the supervision of the Canadian Court.

17. To the best of my information and belief, the Canadian Proceeding is a collective judicial proceeding under Canadian law relating to the adjustment of debt of the Debtors in which the purpose is a corporate restructuring.

---

[5] Initial CCAA Order, ¶ 17.
[6] *Id.* at ¶¶ 44 – 45.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my information and belief.

Executed on this 18th day of November, 2025 in Toronto, Ontario, Canada

/s/ 
Raj S. Sahni
Partner
Bennett Jones LLP