Laura Davis Jones (*pro hac vice* pending)
Steven W. Golden
Mary F. Caloway (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile:  212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>CANACOL ENERGY LTD.,[1] *et al.*<br><br>        Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-12572 (DSJ)<br><br>(Joint Administration Requested) |

## MOTION FOR PROVISIONAL RELIEF IN AID OF CANADIAN
## PROCEEDING PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE

---

[1]        The Debtors, along with the last four digits of each Debtor's unique identifier, as applicable, are as follows: Canacol Energy Ltd. (2074); Cantana Energy GmbH (8873); CNE Oil & Gas S.R.L. (9803); Canacol Energy ULC (0350); Shona Holding GmbH (2126); Canacol Energy Colombia S.A.S. (5633); CNE Energy S.A.S (0691); CNE Oil & Gas S.A.S. (6580); 2498003 Alberta ULC (4611); and 2654044 Alberta Ltd. (3429).  The Foreign Representative's service address for purposes of these Chapter 15 Cases is c/o KPMG Inc., Bay Adelaide Centre, 333 Bay Street, Suite 4600, Toronto, Ontario, Canada M5H 2S5.

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ............................................................................2

II.     JURISDICTION, VENUE, AND STATUTORY BASIS ..................................4

III.    RELEVANT BACKGROUND ...........................................................................4

IV.     RELIEF REQUESTED........................................................................................6

V.      BASIS FOR RELIEF...........................................................................................8

        A.      Provisional Relief Is Appropriate to Maintain the Status Quo ...............8

        B.      Provisional Relief Is Urgently Needed to  Protect the Debtors' Assets and
                Restructuring Efforts................................................................................9

        C.      The Request for Relief Meets the Standards for a Preliminary Injunction............10

                1.      There Is a Substantial Likelihood of Recognition of the Canadian
                        Proceeding as a Foreign Main Proceeding or, in the Alternative, a
                        Foreign Nonmain Proceeding ...................................................11

                2.      The Debtors Will Suffer Irreparable Harm Absent Provisional
                        Relief........................................................................................12

                3.      The Balance of Hardships Favors Debtors and Provisional Relief
                        Will Benefit Creditors..............................................................13

                4.      The Public Interest Favors Granting Provisional Relief............................14

VI.     NOTICE.............................................................................................................14

VII.    NO PRIOR REQUEST ....................................................................................15

VIII.   WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(C) ................15

IX.     SATISFACTION OF LOCAL RULE 9013-1(A) ...........................................15

X.      CONCLUSION.................................................................................................15

## TABLE OF AUTHORITIES

**Page**

## CASES

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009).............................................................................. 10

*In re Andrade Gutierrez Engenharia S.A.*,
   645 B.R. 175 (Bankr. S.D.N.Y. 2022)........................................................ 10, 11

*In re Avila*,
   296 B.R. 95 (Bankr. S.D.N.Y. 2003)........................................................... 10, 13

*In re Banco Nacional de Obras y Servicios Publicos, S.N.C.,*
    91 B.R. 661 (Bankr. S.D.N.Y. 1988)............................................................... 13

*In re Energy Coal S.P.A.,*
   582 B.R. 619 (Bankr. D. Del. 2018) ................................................................ 13

*In re Giftcraft Ltd.*,
   No. 25-11030 (MG), 2025 Bankr. LEXIS 1350 (Bankr. S.D.N.Y. June 4, 2025)  9, 10, 13,
   14

*In re Innua Can.*,
   No. 09-16362, 2009 Bankr. LEXIS 994 (Bankr. D.N.J. Mar. 25, 2009)......................... 13

*In re Iovate Health Sciences International Inc.*,
   Case No. 25-11958 (MG), 2025 Bankr. LEXIS 2284 (Bankr. S.D.N.Y. Sep. 12,
   2025) ................................................................................................ 10, 11, 14

*In re Li-Cycle Holdings Corp.*,
   No. 25-10991 (PB) (Bankr. S.D.N.Y. May 14, 2025) ................................................ 9, 14

*In re Lines*,
   81 B.R. 267 (Bankr. S.D.N.Y. 1988).................................................................. 13

*In re Oak & Fort Corp.*,
   No. 25-11282 (MG) (Bankr. S.D.N.Y June 23, 2025)..................................................... 14

*In re Serviços De Petróleo Constellation S.A.*,
   613 B.R. 497 (Bankr. S.D.N.Y. 2020) ............................................................... 12

*In re Ted Baker Canada Inc.*,
   No. 24-10699(Bankr. S.D.N.Y. Apr. 26, 2024).......................................................... 9, 14

*Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*,
   402 B.R. 571 (Bankr. S.D.N.Y. 2009) .............................................................. 10

*Rehabworks, Inc. v. Lee* (*In re Integrated Health Servs.*),
   281 B.R. 231 (Bankr. D. Del. 2002) ................................................................ 14

*Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*,
    825 F.2d 709 (2d Cir. 1987) ........................................................................... 13

## STATUTES

11 U.S.C § 1501(a) ....................................................................................... 9, 14

11 U.S.C. § 105(a) ....................................................................................... 4, 6, 9

11 U.S.C. § 1510 ................................................................................................ 7

11 U.S.C. § 1517 ............................................................................................ 2, 8

11 U.S.C. § 1517(c) ........................................................................................... 9

11 U.S.C. § 1519 ....................................................................................... passim

11 U.S.C. § 1519(a) ............................................................................. 3, 8, 9, 10

11 U.S.C. § 1519(a)(1) ....................................................................................... 8

11 U.S.C. § 1519(a)(3) ....................................................................................... 7

11 U.S.C. § 1519(e) .......................................................................................... 10

11 U.S.C. § 1520(a) .......................................................................................... 11

11 U.S.C. § 1521 ................................................................................... 4, 6, 7, 11

11 U.S.C. § 1521(a) ............................................................................................ 8

11 U.S.C. § 1522 .............................................................................................. 13

11 U.S.C. § 304 ................................................................................................ 10

11 U.S.C. § 361 .......................................................................................... passim

11 U.S.C. § 362 .......................................................................................... passim

11 U.S.C. § 363 .............................................................................................. 11

11 U.S.C. § 365 ................................................................................................. 4

11 U.S.C. § 365(e) ............................................................................... 3, 7, 8, 12

11 U.S.C. § 549 .............................................................................................. 11

11 U.S.C. § 552 .............................................................................................. 11

28 U.S.C. § 1410 .............................................................................................. 4

28 U.S.C. § 157 ................................................................................................. 4

28 U.S.C. § 157(b)(2)(P) ................................................................................................................ 4

**OTHER AUTHORITIES**

H. Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005) .................................................................. 13

**RULES**

Fed. R. Bankr. P.  9013-1(a) ......................................................................................................... 15

Fed. R. Bankr. P. 65 ...................................................................................................................... 15

Fed. R. Bankr. P. 65(c) .................................................................................................................. 15

Fed. R. Bankr. P. 7008 .................................................................................................................... 4

Fed. R. Bankr. P. 7065 .................................................................................................................. 15

KPMG Inc. ("KPMG"), the court-appointed monitor (in such capacity, the "Monitor") and authorized foreign representative (in such capacity, the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), which are the subject of jointly-administered proceedings (the "Canadian Proceeding") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA"), pending before the Court of King's Bench of Alberta (the "Canadian Court"), by and through its undersigned counsel, respectfully submits this motion (the "Motion"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable to this proceeding through Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and sections 105(a) and 1519 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), for entry of an order substantially in the form attached as **Exhibit A** (the "Provisional Relief Order").

In support of this Motion, the Foreign Representative relies on the (a) *Declaration of Jason Bednar in Support of (I) Verified Chapter 15 Petitions, (II) Foreign Representative's Motions for Orders Granting Provisional Relief and Final Relief in Aid of Canadian Proceeding, and (III) Certain Related Relief* (the "Bednar Declaration"); (b) *Declaration of Katherine Forbes in Support of (I) Verified Chapter 15 Petitions, (II) Foreign Representative's Motions for Orders Granting Provisional Relief and Final Relief in Aid of Canadian Proceeding, and (III) Certain Related Relief* (the "Forbes Declaration"); and (c) *Declaration of Raj S. Sahni in Support of (I) Verified Chapter 15 Petitions, (II) Foreign Representative's Motions for Orders Granting Provisional Relief and Final Relief in Aid of Canadian Proceeding, and (III) Certain Related Relief* (the "Sahni Declaration"), each filed contemporaneously herewith and incorporated herein by reference.  In further support of this Motion, the Foreign Representative respectfully represents as follows:

## I.      Preliminary Statement

1.      On November 17, 2025, each of the Debtors filed with the Canadian Court the necessary materials in support of an application to commence the Canadian Proceeding pursuant to the CCAA to, among other things, provide the breathing space and stability necessary to continue operations and preserve enterprise value.

2.      On November 18, 2025, the Canadian Court entered an interim order (the "Initial CCAA Order").[2]  Among other things, the Initial CCAA Order provides for (i) the appointment of KPMG as Monitor; (ii) a stay of proceedings against the Debtors (the "Canadian Stay"); (iii) the continued implementation of the Debtors' cash management system; and (iv) authorization for the Monitor to act as the Debtors' Foreign Representative in seeking recognition of the Canadian Proceeding in this Court.

3.      On November 18, 2025 (the "Petition Date"), the Foreign Representative filed the Verified Petitions (as defined below) and, on the date hereof, filed the *Motion for (I) Recognition of Foreign Main Proceeding (or, in the Alternative, Foreign Nonmain Proceeding), (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"), seeking, among other things, (a) recognition of the Foreign Representative's status as the Debtors' foreign representative, (b) recognition of the Canadian Proceeding as a "foreign main proceeding" or, in the alternative, a foreign nonmain proceeding, under section 1517 of the Bankruptcy Code, and (c) certain related relief.  In order to provide the Debtors with the breathing space and stability necessary to implement their restructuring through the Canadian Proceeding, the Foreign Representative seeks certain provisional relief between the date hereof and this Court's entry of the Foreign Representative's

---

[2]      A true and correct copy of the Initial CCAA Order is attached to the Sahni Declaration as **Exhibit 1**.

proposed order recognizing the Canadian Proceeding as a foreign main proceeding (or, in the alternative, foreign nonmain proceeding), and requests, among other things, that this Court immediately order the application of sections 361, 362, and 365(e) of the Bankruptcy Code to these Chapter 15 Cases.  As discussed in further detail below, absent such relief, certain of the Debtors' creditors may be able to enforce remedies against the Debtors—most notably triggering deposit account control agreements (each, a "DACA") and allowing for the Debtors' secured creditor to sweep all of the Debtors' funds from their deposit accounts.

4.       Thus, the relief requested in this Motion, including and in particular the imposition of the automatic stay in the United States pursuant to section 1519(a) of the Bankruptcy Code, is critical to the Debtors because such actions, if executed, would irreparably harm the Debtors, not only significantly eroding the value of the Debtors' business (and thus negatively affecting the Debtors' prospects of a successful, value-maximizing restructuring), but would threaten an interruption or shut down of the Debtors' operations and have material consequences on Colombia's grid reliability and generation output.

5.       Additionally, the Debtors' commencement of the Canadian Proceeding and these Chapter 15 Cases may trigger an event of default under certain of the Debtors' executory contracts, which contain arguably unenforceable provisions permitting termination upon the Debtors' filing of a case under any section or chapter of the Bankruptcy Code.  The provisional relief requested by the Foreign Representative, which is generally afforded to debtors in chapter 15 recognition proceedings, is required to prevent individual creditors from acting to frustrate the purpose of the Canadian Proceeding by disregarding the Canadian Stay.

6.       Chapter 15 of the Bankruptcy Code is intended to prevent precisely these negative effects on a debtor's restructuring in a foreign country by complementing and facilitating corporate

rehabilitation in another country. Therefore, and for reasons further described herein, the Foreign Representative respectfully submits that provisional relief is urgently needed to ensure there will not be disruption to the Canadian Proceeding, to prevent harm to the Debtors, and to aid the Debtors' restructuring.

## II.      JURISDICTION, VENUE, AND STATUTORY BASIS

7.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as the *Amended Standing Order of Reference* dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y Feb. 2, 2012) (Preska, CJ). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). The Foreign Representative confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8.      Venue is proper under 28 U.S.C. § 1410 because each of the Debtors' principal assets in the United States are located within the Southern District of New York.

9.      The bases for the relief requested herein are sections 105(a), 361, 362, 365, 1519, and 1521 of the Bankruptcy Code.

## III.     RELEVANT BACKGROUND

10.      The Recognition Motion and the Bednar Declaration describe the Debtors' business, corporate structure, and the events leading up to the Canadian Proceeding and these Chapter 15 Cases and are incorporated herein by reference.

11.      By the Initial CCAA Order, the Canadian Court expressly requested the assistance of the courts in the United States in the following provisions:

This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in any foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.[3]

12.     As detailed in the Bednar Declaration, the Debtors are obligors under three funded debt facilities: (i) the secured term loan facility (the "Macquarie Credit Facility") with Macquarie Bank Ltd. ("Macquarie") as Administrative Agent, Collateral Agent, and Sole Lead Arranger and Bookrunner; (ii) the unsecured revolving credit facility (the "Revolving Credit Facility") with Deutsche Bank Trust Company Americas, as Administrative Agent; and (iii) the unsecured indenture (the "Indenture") with Citibank, N.A., as Trustee, Security Registrar and Paying Agent, Agent, and CitiGroup Global Markets Inc. Deutsche Bank, AG and JP Morgan Chase Bank, N.A., as joint lead arrangers and joint bookrunners, and a syndicate of lenders providing for the issuance of Canacol's 5.750% Senior Notes due 2028.[4] Among other things, the Macquarie Credit Facility is secured by a first-priority security interest against the Canacol Group's assets in the United States and springing control over certain United States collection accounts held at Citibank in New York pursuant to the DACAs.[5]

13.     Based on their current cash position, the Debtors are unable to remit significant scheduled payments that are due to their lenders under the foregoing facilities this month.[6] Specifically, the following payments are due in November 2025: (i) a payment under the

---

[3]     Initial CCAA Order at ¶ 44.
[4]     *See* Bednar Declaration at ¶¶ 23-38.
[5]     *Id.* at ¶ 27.
[6]     *Id.* at ¶ 49-50.

Macquarie Credit Facility due on November 18, 2025 in the amount of $6,746,972.69; (ii) a payment under the Revolving Credit Facility due on November 21, 2025 in the approximate amount of $4,454,312.89; and (iii) a payment under the Indenture due on November 24, 2025 in the amount of $14,231,250.00 (collectively, the "November Payments").[7]

14.    The Debtors commenced the Canadian Proceeding and these Chapter 15 Cases in light of their cash flow situation and inability to make the November Payments.  As a result of not making the November Payment under the Macquarie Credit Facility (as defined in the Bednar Declaration), Macquarie may assert a default under the Macquarie Credit Agreement, which itself would result in cross default under the Revolving Credit Agreement (as defined in the Bednar Declaration) and Indenture (as defined in the Bednar Declaration) (collectively, the "Impending Defaults").[8]  If triggered, the Impending Defaults would entitle such creditors to enforce remedies against the Debtors.

## IV.    RELIEF REQUESTED

15.    Pursuant to sections 105(a), 1519, and 1521 of the Bankruptcy Code, the Foreign Representative respectfully requests that the Court enter the Provisional Relief Order, substantially in the form attached hereto as **Exhibit A**, granting the following provisional relief pending recognition of the Canadian Proceeding:

 a.    Recognition and enforcement in the United States, on a provisional basis, of the Canadian Proceeding.

 b.    The Foreign Representative shall be the representative of the Debtors with full authority to administer the Debtors' assets and affairs in the United States.

---

[7]    *Id.* at ¶ 49.
[8]    *Id.* at ¶ 50.

c.      Application of section 361 of the Bankruptcy Code with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.

d.      Application of section 362 of the Bankruptcy Code with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States. For the avoidance of doubt and without limiting the generality of the foregoing, the Provisional Relief Order shall impose a stay within the territorial jurisdiction of the United States of:

      i.      The commencement or continuation—including the issuance or employment of process—of any judicial, administrative, or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative, or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof or to exercise any control over the Debtors' assets located in the United States except as authorized by the Foreign Representative in writing;

      ii.     The creation, perfection, seizure, attachment, enforcement, or execution of liens or judgments against the Debtors' property in the United States or from transferring, encumbering or otherwise disposing of or interfering with the Debtors' assets or agreements in the United States without the express consent of the Foreign Representative;

      iii.    Any act to collect, assess, or recover a claim against any of the Debtors that arose before the commencement of the Debtors' Chapter 15 Cases; and

      iv.     The setoff of any debt owing to any of the Debtors that arose before the commencement of the Debtors' Chapter 15 Cases against any claim against of the Debtors.

e.      For counterparties to certain of the Debtors' executory contracts, application of section 365(e) of the Bankruptcy Code with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.

f.      The Foreign Representative shall have the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of United States Courts over the Foreign Representative in accordance with section 1510 of the Bankruptcy Code and the granting of additional relief in accordance with sections 1519(a)(3) and 1521 of the Bankruptcy Code.

g.   Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry; (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order; and (iii) the Foreign Representative is authorized and empowered, and may, in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order.

## V.   BASIS FOR RELIEF

16.   The Foreign Representative has contemporaneously filed the Verified Petitions and the Recognition Motion, seeking recognition and a ruling that the Canadian Proceeding is a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding) under section 1517 of the Bankruptcy Code. Section 1519 of the Bankruptcy Code permits the Court "from the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors."[9]  Subsections 1519(a)(1)-(3) of the Bankruptcy Code define the scope of available provisional relief, which includes:

a.   staying execution of the debtor's assets;

b.   entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

c.   any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

## A.   Provisional Relief Is Appropriate to Maintain the Status Quo

17.   The Foreign Representative seeks imposition of sections 361, 362, and 365(e) of the Bankruptcy Code for the purpose of maintaining the status quo until the Court rules on the

---

[9]      11 U.S.C. § 1519(a).

Recognition Motion. Accordingly, the Foreign Representative seeks provisional relief under sections 105(a) and 1519 of the Bankruptcy Code.

18.     The provisional relief requested here is an "effective mechanism" to implement the chapter 15 policies of promoting cooperation between courts of the United States and courts of foreign countries involved in cross-border restructuring cases. The "fair and efficient administration of cross border [cases] that protects the interest of all creditors, and other interested entities," including the Debtors, is essential to the "protection and maximization of the value of the [Debtors'] assets."[10]

19.     Furthermore, the provisional relief sought herein is of a type frequently granted in chapter 15 cases. Bankruptcy courts have routinely imposed the section 362 stay and ordered similar relief as is requested herein to maintain the status quo pending recognition or disposition of foreign proceedings in ancillary cases under both chapter 15 and its predecessor (section 304 of the Bankruptcy Code) including in respect of recognition proceedings that relate to restructurings of corporations in Canadian courts under the CCAA.[11]

**B.**     **Provisional Relief Is Urgently Needed to
        Protect the Debtors' Assets and Restructuring Efforts**

20.     The provisional relief is urgently needed here to protect the Debtors' assets and to protect the interests of creditors as a whole.[12] Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap between the time the petition for recognition is filed and the time the court makes a decision on whether a proceeding should be recognized.[13] Prior to recognition, a chapter 15 debtor is not automatically

---

[10]     11 U.S.C. § 1501(a).

[11]     *See, e.g.*, *In re Giftcraft Ltd.*, No. 25-11030 (MG), 2025 Bankr. LEXIS 1350 (Bankr. S.D.N.Y. June 4, 2025); *see also In re Li-Cycle Holdings Corp.*, No. 25-10991 (PB) (Bankr. S.D.N.Y. May 14, 2025), ECF No. 12; *In re Ted Baker Canada Inc.*, No. 24-10699 (Bankr. S.D.N.Y. Apr. 26, 2024), ECF No. 22.

[12]     *See* 11 U.S.C. § 1519(a).

[13]     *Id.* § 1517(c).

entitled to the automatic stay or any other provisions of the Bankruptcy Code, which, in this case, necessitates an order granting provisional relief. Provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors."[14]

21.    Without the limited application of section 362, there is a real and significant risk that one or more of the Debtors' creditors will exercise remedies—including Macquarie (who is massively oversecured) potentially triggering the DACAs, sweeping the Debtors' funds from their deposit accounts, and irreparably harming the Debtors' prospects of a value-maximizing reorganization for all stakeholders. This risk is precisely what bankruptcy courts in this district have found justifies provisional relief under section 1519 of the Bankruptcy.[15]

## C.    The Request for Relief Meets the Standards for a Preliminary Injunction

22.    Provisional relief under chapter 15 of the Bankruptcy Code is conditioned on a foreign representative demonstrating that a debtor meets the standards applicable to a preliminary injunction.[16]  In the Second Circuit, a party seeking a preliminary injunction must establish: (a) a likelihood of success on the merits (i.e. obtaining recognition of the foreign proceeding); (b) irreparable harm if provisional relief is not granted; (c) that the balance of hardships tips in the movant's favor; and (d) that public interest favors provisional relief.[17]  "A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'"[18]

---

[14]    *Id.* § 1519(a).

[15]    *See, e.g.*, *Giftcraft*, 2025 Bankr. LEXIS 1350, at *32 (enforcement actions against US assets would constitute irreparable harm); *In re Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (finding that, under former section 304 of the Bankruptcy Code, irreparable harm would be caused by permitting creditors to execute judgments against bond proceeds because it would "diminish the recovery available to other creditors and possibly wreck the reorganization").

[16]    11 U.S.C. § 1519(e).  *See Giftcraft,* 2025 Bankr. LEXIS 1350, at *17 (applying the standards for preliminary injunction to determine whether provisional relief should be granted).

[17]    *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 181 (Bankr. S.D.N.Y. 2022); *Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588 (Bankr. S.D.N.Y. 2009) (applying the "traditional preliminary injunction standard as modified to fit the bankruptcy context").

[18]    *In re Iovate Health Sciences International Inc.*, Case No. 25-11958 (MG), 2025 Bankr. LEXIS 2284, *25 (Bankr. S.D.N.Y. Sep. 12, 2025) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).

      **1.**      **There Is a Substantial Likelihood of Recognition of the Canadian Proceeding as a Foreign Main Proceeding or, in the Alternative, a Foreign Nonmain Proceeding**

23.      In a request for provisional relief under chapter 15, the "likelihood of success on the merits" refers to the likelihood that the bankruptcy court will recognize the foreign proceeding.[19] The first factor, therefore, turns on the likelihood that the Foreign Representative will obtain recognition of the Canadian Proceeding as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding).

24.      As fully set out in the Recognition Motion and the accompanying declarations, the Foreign Representative is likely to succeed in obtaining recognition of the Canadian Proceeding as a foreign main proceeding or, in the alternative as to one or more Debtors, a foreign nonmain proceeding. As those papers demonstrate, in short, the Canadian Proceeding is a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding) and the Monitor is a "foreign representative" as those terms are defined in the Bankruptcy Code. In addition, these Chapter 15 Cases were duly and properly commenced by filing the verified chapter 15 petitions accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules.

25.      Upon recognition of the Canadian Proceeding as a foreign main proceeding, sections 361, 362, 363, 549, and 552 of the Bankruptcy Code will automatically apply in these Chapter 15 Cases, as set forth in section 1520(a) of the Bankruptcy Code. Even if the Canadian Proceeding was recognized as a foreign nonmain proceeding as to one or more Debtors, it is likely that this Court will grant the same relief pursuant to section 1521 of the Bankruptcy Code—upon

---

19      *Iovate*, 2025 Bankr. LEXIS 2284, *24 (citing *Andrade Gutierrez*, 645 B.R. at 181).

recognition, "principles of comity and the provisions of chapter 15 can provide substantially similar relief to a debtor—whether a proceeding is recognized as main or nonmain."[20]

26.     Accordingly, for the reasons set forth in the Recognition Motion and accompanying declarations, it is likely that this Court will recognize the Canadian Proceeding as a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding) and the Debtors will be accorded all available relief (including the imposition of the automatic stay).

**2.     The Debtors Will Suffer Irreparable Harm Absent Provisional Relief**

27.     Application of provisional relief pursuant to sections 362 and 365(e) of the Bankruptcy Code in these cases is critical to the prevention of irreparable damage to the Debtors' reorganization proceeding in Canada.  These Chapter 15 Cases were commenced for the purpose of obtaining the assistance of this Court in respect of the Canadian Proceeding and to give effect in the United States to the orders of the Canadian Court.  As set out in the Bednar Declaration and in the Recognition Motion, the Debtors have assets in the United States, notably including numerous bank accounts with Citibank in New York, which are covered by DACAs.  Unless the relief requested herein is granted, Macquarie could attempt to trigger the DACAs and sweep the funds therein (and to be deposited therein in the future).  Doing so would irreparably harm the Debtors' by materially eroding the value of their business and reducing the prospects of a value-maximizing restructuring and would further have material consequences on Colombia's grid reliability and generation output

28.     "In the cross-border insolvency context, courts have recognized that irreparable harm exists where local actions could hinder the orderly process of a foreign proceeding and the

---

[20]     *In re Serviços De Petróleo Constellation S.A.*, 613 B.R. 497, 506 (Bankr. S.D.N.Y. 2020).

4921-5519-7562.3 50180.00001                    12

goal of the fair distribution of assets."[21] The relief requested herein is necessary to protect against these risks.[22] A number of courts have recognized the need to provide provisional relief in order to ensure the orderly distribution of a debtor's assets in a single proceeding and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions.[23]

### 3. The Balance of Hardships Favors Debtors and Provisional Relief Will Benefit Creditors

29. Section 1522 of the Bankruptcy Code permits courts to grant relief under section 1519 if the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected."[24] Legislative history of this section suggests it was intended to ensure "the foreign proceeding [is not] seriously and unjustifiably injuring United States creditors."[25]

30. In contrast to the hardships described above, preservation of the status quo through, among other things, imposition of the automatic stay and prevention of contract termination while the Foreign Representative and the Debtors undertake the reorganization process in the Canadian Proceeding will not prejudice creditors. Indeed, creditors as a whole will benefit from such relief.[26]

---

[21] *Giftcraft*, 2025 Bankr. LEXIS 1350, *31 (citing *In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("[A]s a rule, therefore, irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors")).

[22] *See, e.g., Giftcraft*, 2025 Bankr. LEXIS 1350 at *32-33 (creditor enforcement would "diminish the value of the [moving debtors'] assets to the detriment of all stakeholders," constituting irreparable harm); *see also In re Banco Nacional de Obras y Servicios Publicos, S.N.C.,* 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (finding injunctive relief necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group."); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (concluding that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").

[23] *See, e.g., In re Energy Coal S.P.A.* 582 B.R. 619, 626-27 (Bankr. D. Del. 2018) (stating that harm to an estate exists where orderly determination of claims and fair distribution of assets are disrupted); *Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709 (2d Cir. 1987) (same); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group"); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (stating that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury").

[24] 11 U.S.C. § 1522.

[25] H. Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005).

[26] *In re Innua Can.*, No. 09-16362, 2009 Bankr. LEXIS 994, at *11 (Bankr. D.N.J. Mar. 25, 2009) (finding a temporary maintaining of the status quo pending recognition of the foreign proceedings actually served to

The Provisional Relief Order specifically provides that any creditor that believes it has been harmed by the provisional relief granted therein may file a motion with the Court seeking relief therefrom.[27] Granting the request for provisional relief will benefit the Debtors' creditors because it will ensure the value of the Debtors' assets is preserved, protected, and maximized for the benefit of _all_ of the creditors.

### 4. The Public Interest Favors Granting Provisional Relief

31. As noted above, the requested interim relief is consistent with the policies underlying the Bankruptcy Code, including the provision of a breathing spell for a debtor and the equitable treatment of all creditors. [28] Additionally, granting the requested relief is in the public interest because it will facilitate the Debtors' efforts to complete a court-supervised restructuring for the benefit of its creditors and other stakeholders—including those in the United States.[29] Moreover, granting provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code. For these reasons, bankruptcy courts have frequently granted requests for similar provisional relief in chapter 15 cases.[30]

## VI. NOTICE

32. Notice of this provisional relief application will be served by email or, where email is unavailable, overnight mail to all entities against whom provisional relief is being sought

---

benefit creditors "by allowing for an orderly administration of the Foreign Debtors' financial affairs," tipping the balance of harm in favor of the foreign representative).

[27] *See Giftcraft*, 2025 Bankr. LEXIS 1350, at *33.

[28] 11 U.S.C. § 1501(a).

[29] *See Giftcraft*, 2025 Bankr. LEXIS 1350, at *33-34; *Rehabworks, Inc. v. Lee* (*In re Integrated Health Servs.*), 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests.").

[30] *See, e.g., In re Iovate Health Sciences International Inc.*, 2025 Bankr. LEXIS 2284; *In re Giftcraft Ltd.*, 2025 Bankr. LEXIS 1350; *see also In re Oak & Fort Corp.*, No. 25-11282 (MG) (Bankr. S.D.N.Y June 23, 2025), ECF No. 21; *In re Li-Cycle Holdings Corp.*, No. 25-10991 (PB) (Bankr. S.D.N.Y. May 14, 2025), ECF. No. 12; *In re Ted Baker Canada Inc.,* No. 24-10699 (MEW) (Bankr. S.D.N.Y. April 25, 2014), ECF No. 17.

under section 1519 of the Bankruptcy Code. The Foreign Representative submits that no other or further notice is necessary or required.

## VII.   NO PRIOR REQUEST

33.   No previous request for the relief requested herein has been made to this Court or any other court.

## VIII.   WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(c)

34.   Bankruptcy Rule 7065 expressly provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)."[31] To the extent Rule 65 of the Federal Rules of Civil Procedure applies, the Foreign Representative believes that the security requirements imposed by Rule 65(c) are unwarranted under the circumstances and, accordingly, respectfully requests a waiver of such requirements pursuant to Bankruptcy Rule 7065.[32]

## IX.   SATISFACTION OF LOCAL RULE 9013-1(a)

35.   This Application satisfies Rule 9013-1(a) of the local Bankruptcy Rules for the Southern District of New York because it "specif[ies] the rules and statutory provisions upon which it is predicated and the legal authorities that support the requested relief."

## X.   CONCLUSION

36.   For the reasons set forth herein, the Foreign Representative respectfully requests that the Court enter an order granting provisional relief in the form attached as **Exhibit A** hereto, and grant such other, further, and different relief as to the Court may seem just and proper.

---

[31]   Fed. R. Bankr. P. 7065.

[32]   *Giftcraft*, 2025 Bankr. LEXIS 1350 at *37 (finding security not required where debtors were under supervision of Canadian court and relief would be in place only a short time until recognition would be decided).

Dated: November 19, 2025

PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Steven W. Golden*

Laura Davis Jones (*pro hac vice* pending)
Steven W. Golden
Mary F. Caloway (*pro hac vice* pending)
1700 Broadway, 36th Floor
New York, New York 10019
Telephone:  212-561-7700
Facsimile:  212-561-7777

*Counsel to the Foreign Representative*