Laura Davis Jones (*admitted pro hac vice*)
Steven W. Golden
Mary F. Caloway (*admitted pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile: 212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| CANACOL ENERGY LTD., *et al.*[1] | Case No. 25-12572 (DSJ) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

**FOREIGN REPRESENTATIVE'S EMERGENCY MOTION FOR ORDER RECOGNIZING AND ENFORCING SECOND AMENDED AND RESTATED INITIAL ORDER INCLUDING DIP FINANCING AUTHORIZED THEREUNDER**

---

[1] The Debtors, along with the last four digits of each Debtor's unique identifier, as applicable, are as follows: Canacol Energy Ltd. (2074); Cantana Energy GmbH (8873); CNE Oil & Gas S.R.L. (9803); Canacol Energy ULC (0350); Shona Holding GmbH (2126); Canacol Energy Colombia S.A.S. (5633); CNE Energy S.A.S (0691); CNE Oil & Gas S.A.S. (6580); 2498003 Alberta ULC (4611); and 2654044 Alberta Ltd. (3429). The Foreign Representative's service address for purposes of these Chapter 15 Cases is c/o KPMG Inc., Bay Adelaide Centre, Suite 4600 333 Bay Street, Toronto, Ontario, Canada M5H 2S5.

**TABLE OF CONTENTS**

**Page**

I. JURISDICTION AND VENUE ...................................................................................................2

II. BACKGROUND .........................................................................................................................2

    A.       The Debtors' Business Operations. ...........................................................................2

    B.       The Canadian Proceeding and Chapter 15 Cases .....................................................3

    C.       Need for DIP Financing/Canadian Approval Process. .............................................4

III. RELIEF REQUESTED ..............................................................................................................9

IV. BASIS FOR RELIEF ................................................................................................................9

V. CONCLUSION .........................................................................................................................14

VI. NOTICE ...................................................................................................................................14

VII. NO PRIOR REQUEST ..........................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re Oi S.A.*,
    587 B.R. 253 (Bankr. S.D.N.Y. 2018) ................................................................. 10, 11

*In re Standing Order of Reference Re: Title 11*,
    12 Misc. 00032 (S.D.N.Y Feb. 2, 2012) ..................................................................... 2, 18

*In re Vitro SAB de CV*,
    701 F.3d (5th Cir. 2012) ...................................................................................... 9

**STATUTES**

11 U.S.C. § 101 ................................................................................................................ 1

11 U.S.C. § 105 ............................................................................................................ 1, 2

11 U.S.C. § 1507 ..................................................................................................... 1, 9, 10

11 U.S.C. § 1507(a) ........................................................................................................ 10

11 U.S.C. § 1507(b) .............................................................................................. 10, 11, 12

11 U.S.C. § 1507(b)(3) .................................................................................................... 11

11 U.S.C. § 1519 ............................................................................................................ 12

11 U.S.C. § 1521(a) .......................................................................................................... 9

11 U.S.C. § 1525 ..................................................................................................... 1, 9, 10

11 U.S.C. § 1527 ......................................................................................................... 1, 9

11 U.S.C. § 1527(3) ........................................................................................................ 10

11 U.S.C. § 1532 .............................................................................................................. 1

28 U.S.C. § 1334 ........................................................................................................ 2, 18

28 U.S.C. § 1410 ........................................................................................................ 2, 18

28 U.S.C. § 157 .......................................................................................................... 2, 18

28 U.S.C. § 157(b) .......................................................................................................... 18

28 U.S.C. § 157(b)(2)(P) ................................................................................................... 2

28 U.S.C. § 158(a) ........................................................................................................................ 22


**OTHER AUTHORITIES**

Creditors Arrangement Act,
    R.S.C. 1985, c C-36, § 36.1(1) ................................................................................................ 11

Creditors Arrangement Act,
    R.S.C. 1985, c. C-36 ................................................................................................................. 1

Creditors Arrangement Act,
    RSC 1985, c C-36, § 101 ........................................................................................................ 11

Creditors Arrangement Act,
    RSC 1985, c C-36, § 38 .......................................................................................................... 11

Creditors Arrangement Act,
    RSC 1985, c C-36, § 95 .......................................................................................................... 11

H.R. Rep. No.
    109-31, pt. 1, at 109 (2005) ...................................................................................................... 9


**RULES**

Fed. R. Bankr. P. 1015(b) ............................................................................................................. 2

Fed. R. Bankr. P. 7008 .................................................................................................................. 2

Fed. R. Bankr. P. 7052 ................................................................................................................ 17

Fed. R. Bankr. P. 9014 ................................................................................................................ 17

Fed. R. Civ. P. 52 ........................................................................................................................ 17

KPMG Inc., in its capacity as the court-appointed monitor (in such capacity, the "Monitor") and the authorized foreign representative (the "Foreign Representative") of the above-captioned foreign debtors (collectively, the "Debtors"), which are the subject of jointly-administered proceedings (collectively, the "Canadian Proceeding") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") before the Court of King's Bench of Alberta (the "Canadian Court"), by and through its undersigned counsel, respectfully submits this motion (the "Motion") pursuant to sections 105, 1507, 1521, 1525 and 1527 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (A) recognizing and enforcing the Canadian Court's *Second Amended and Restated Initial Order* (the "SARIO"), including the DIP Financing authorized thereunder, a draft of which is attached hereto as **Exhibit B**[2], which authorizes, among other things, (x) the Debtors to obtain debtor-in-possession financing and borrow up to the maximum aggregate principal amount of the Canadian dollar equivalent of US$67,000,000 (the "DIP Financing"), and (y) grants a corresponding charge (the "DIP Lenders' Charge") over the Debtors' Property (as defined in the SARIO) in favor of the DIP Lenders (as defined below).

In support of this Motion, the Foreign Representative relies on the *Declaration of Jason Bednar in Support of Foreign Representative's Emergency Motion for Order Recognizing and Enforcing Second Amended and Restated Initial Order Including DIP Financing Authorized Thereunder* (the "Bednar Declaration") and the *Second Report of the Monitor* (the "Second

---

[2] The Canadian Court will hold a hearing to consider approval of the SARIO on December 10, 2025. The Debtors will file the SARIO as entered by the Canadian Court on this Court's docket prior to the hearing on this Motion.

Report"), each filed contemporaneously herewith and incorporated herein by reference. In further support of this Motion, the Foreign Representative respectfully represents as follows:

I.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as the *Amended Standing Order of Reference dated January 31, 2012, Reference M-431, In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y Feb. 2, 2012) (Preska, CJ). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). The Foreign Representative confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper under 28 U.S.C. § 1410.

3. The statutory bases for the relief requested herein are sections 105 and 1521 of the Bankruptcy Code and Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

II.

**BACKGROUND**

**A.    The Debtors' Business Operations.**

4. The Debtors are a highly integrated oil and natural gas enterprise engaged in the exploration, development, production, processing, and sale of oil and natural gas, primarily in the

country of Colombia. The Canacol Group's Colombian natural gas production[3] is a critical fuel source for Colombia's electrical grid, with a majority of its gas being sold to power generators in Colombia. Canacol Energy Ltd. ("Canacol"), the direct or indirect parent of each of the other Debtors (collectively, with Canacol, the "Canacol Group"), centrally manages all corporate and treasury activities of the Debtors from the corporate head office in Calgary, Alberta, Canada (the "Head Office").

B.  **The Canadian Proceeding and Chapter 15 Cases**

5.  On November 17, 2025, the Debtors filed materials to commence the Canadian Proceeding pursuant to the CCAA to, among other things, provide the breathing space and stability necessary to continue operations and preserve the Canacol Group's enterprise value.

6.  On November 18, 2025, the Canadian Court entered an interim order (the "Initial CCAA Order"). Among other things, the Initial CCAA Order provided for (i) the appointment of KPMG as Monitor; (ii) a stay of proceedings against the Debtors in Canada (the "Canadian Stay"); (iii) the continued implementation of the Debtors' cash management system; and (iv) authorization for the Monitor to act as the Debtors' Foreign Representative in seeking recognition of the Canadian Proceeding in this Court. Following a "comeback hearing" on November 26, 2025, the Canadian Court entered an amended and restated Initial CCAA Order (the "Amended and Restated Initial CCAA Order") extending the Canadian Stay and granting certain other relief. On December 1, 2025, the Debtors filed a notice of filing of the Amended and Restated Initial CCAA Order [Docket No. 28].

---

[3] In addition to its production and sale of natural gas, the Canacol Group also produces oil, although these activities are a lesser part of the overall business.

7. On November 18, 2025, to preserve value for all stakeholders, the Foreign Representative filed verified petitions for relief under chapter 15 of the Bankruptcy Code (the "Petitions"), thus commencing these ancillary chapter 15 cases (the "Chapter 15 Cases"). Contemporaneously with filing the Petitions, the Foreign Representative filed motions seeking provisional relief [Docket No. 7] (the "Provisional Relief Motion") and recognition of the Canadian Proceeding as a foreign main proceeding [Docket No. 8] (the "Recognition Motion").

8. On November 20, 2025, this Court entered the *Order Granting Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [Docket No. 25], granting provisional, injunctive, and related relief. A hearing to consider the Recognition Motion and related final relief is scheduled for December 11, 2025.

C.  **Need for DIP Financing/Canadian Approval Process.**

9. The Canacol Group is in a severe liquidity crisis. It requires DIP Financing in the immediate term in order to maintain its oil and gas production operations. The failure of the Canacol Group to obtain financing immediately would not only destroy any prospect of a successful restructuring but would also result in a cascading material impairment to the Canacol Group's ability to sustain its critical and substantial supply of natural gas to the Colombian power grid. It is essential at this time to avoid the prospect of a disorderly disruption to the Canacol Group's operations in Colombia, which in all cases would have a material effect on end-use consumers in that country.

10. As described in detail in the Bednar Declaration, the Debtors conducted a DIP solicitation process under the supervision of the Canadian Court and with the assistance of the Monitor and Canacol's financial advisor, Plexus Capital LLC ("Plexus"). At the conclusion of the DIP solicitation process, the Debtors determined that the DIP Financing offered by an ad hoc group

of certain of its existing bondholders (the "<u>DIP Lenders</u>") was the best option available. Accordingly, the Debtors sought the Canadian Court's approval of the DIP Financing. The Debtors anticipate that the Canadian Court will enter the SARIO, including approval of the DIP Financing, following a hearing on December 10, 2025.

11.   The material terms of the DIP Financing are set forth below (definitions in this section shall have the meanings given them in the Bednar Declaration):

| | |
|---|---|
| Borrowers | Canacol, 2654044 Alberta Ltd., Canacol Energy ULC, 2498003 Alberta ULC, Canacol Energy Colombia S.A.S., CNE Energy S.A.S., and CNE Oil & Gas S.A.S. |
| Guarantors | Cantana Energy GmbH, Shona Holding GmbH, CNE Oil & Gas S.R.L., Cantana Energy Sucursal Colombia, CECSA Midstream S.A. E.S.P. Sucursal Colombia, CNEOG Colombia Sucursal Colombia, and CECSA Energy Inc. Sucursal Colombia |
| DIP Facility | Credit facility up to a maximum amount of US$67,000,000, comprised of the following sub-facilities:<br><br>(i) delayed-draw term loan sub-facility in the maximum principal amount of US$45,000,000 (the "<u>Tranche A Sub-Facility</u>"), by way of the following advances:<br>• "Initial Advance" up to the maximum amount of US$15,000,000;<br>• "Subsequent Advance" up to the maximum amount of US$30,000,000<br>   o It is a requirement of the DIP Loan Commitment Letter, dated as of December 2, 2025, by and between Borrowers, Guarantors, and each of the Lenders party thereto (as amended from time to time, the "<u>Commitment Letter</u>") that the Subsequent Advance be drawn by the Borrowers by February 15, 2026, or this part of the facility will be automatically terminated.<br><br>(ii) letter of credit sub-facility to renew and/or replace certain Expiring LCs (the "<u>Tranche B Letters of Credit</u>"), in the aggregate maximum amount of US$20,000,000 (the "<u>Tranche B Sub-Facility</u>"); and<br><br>(iii) letter of credit sub-facility for new letters of credit (the "<u>Tranche C Letters of Credit</u>") to be issued for and on behalf of one or more of the Loan Parties (as defined in the Commitment Letter) as specified in the |

| | |
|---|---|
| | Cash Flow Forecast in the aggregate maximum amount of US$2,000,000 (the "Tranche C Sub-Facility")[4] |
| Material Condition(s) to Advances | *All Facilities*<br>• Delivery of a Cash Flow Forecast as approved by the Monitor<br>• The DIP Approval Order (i.e., the SARIO)<br><br>*Tranche A Sub-Facility*<br>Initial Advance Conditions<br>• The US Recognition Order<br>• The US DIP Approval Recognition Order<br>• Borrowers' compliance with the Cash Flow Forecast<br>• Agreement between the Borrower and the DIP Lender as to the terms of a sale and investment solicitation process (a "SISP").<br><br>Subsequent Advance Conditions<br>• All Initial Advance conditions satisfied<br>• The Colombian Recognition Order<br>• The Colombian DIP Approval Recognition Order<br>• The Colombian DIP Security Documents<br><br>*Tranche B Sub-Facility / Tranche C Sub-Facility*<br>• Proceeds must be used for disbursements in accordance with the Cash Flow Forecast (including any Expiring LC's to be replaced by a Tranche B Letter of Credit)<br>• Delivery of a notice including all particulars of the Letter of Credit being requested |
| Permitted Variance (vs. Cash Flow Forecast) | a negative variance of (i) more than 15.0% actual receipts for such testing period; (ii) more than 15% actual receipts for the cumulative period commencing on the date of the initial Cash Flow Forecast and ending on the last day of such testing period; (iii) more than 10.0% actual disbursements for such testing period; and (iv) more than 10% actual disbursements for the cumulative period commencing on the date of the initial Cash Flow Forecast and ending on the last day of such testing period. |
| Interest | Interest is payable by the Borrowers on the first Business Day of each calendar month:<br>• at the rate of 13% per annum on the outstanding principal amount of Tranche A Sub-Facility on account of interest |

---

[4] Each of the Tranche B Sub-Facility and the Tranche C Sub-Facility are uncommitted as of the date hereof, and the Debtors remain in active discussions with various parties to seek such commitments.

|  |  |
|---|---|
|  | accrued during the immediately preceding month to and including the date of the Subsequent Advance; and<br>• at the rate of 11% per annum on the (full) outstanding principal amount of Tranche A Sub Facility on account of interest accrued from and after the date of the Subsequent Advance during the immediately preceding month or portion of such month. |
| Milestones | By December 12, 2025:<br>• US Recognition Order shall have been issued by the US Court<br>By December 15, 2025:<br>• The DIP Approval Order (i.e., the SARIO) shall have been issued by the CCAA Court<br>By December 19, 2025:<br>• The US DIP Approval Recognition Order shall have been issued by the US Court<br>By December 22, 2025:<br>• Borrowers shall have retained a sale advisor to assist with the SISP<br>By December 28, 2025:<br>• Colombian Recognition Order shall have been issued by the Colombian Court<br>By January 7, 2026:<br>• Colombian DIP Approval Recognition Order shall have been issued by the Colombian Court<br>By January 20, 2026:<br>• The CCAA Court shall have issued a SISP Approval Order<br>• The CCAA Court shall have issued an order, approving a key employee retention plan satisfactory to the Lenders<br>By January 23, 2026:<br>• Completion of the Colombian DIP Security Process<br>By February 14, 2026<br>• SISP approval order of the CCAA Court shall have been recognized and approved by a Colombian Court<br>By June 30, 2026:<br>• Closing of a transaction selected pursuant to the SISP; or<br>• An Acceptable Plan of Arrangement has become effective. |
| Fees and Expenses | *Commitment Fee*: 5% of the maximum amount of such Lender's DIP Facility Commitment Amount under the Tranche A Sub-Facility;<br><br>*LC Fees:* (1) participation fee to each Lender in respect of its participations in Letters of Credit, which shall accrue at 5% on the average daily amount of such Lender's LC Exposure; (2) the applicable Issuing Bank fronting fee, which shall accrue at the rate of 0.25% per annum on the average daily amount of the LC Exposure; and (3) the |

|  | Issuing Bank's standard fees with respect to the issuance, amendment, renewal, extension of any LC.<br><br>*Lenders' Fees and Expenses:* all reasonable and documented fees, expenses and disbursements of the Tranche A Lenders, the Fronting Lender, and the DIP Agent (if applicable) and the fees, expenses, and disbursements of their advisors, and the Notes Trustee and counsel to the Notes Trustee incurred in connection with the Borrowers, the Restructuring Proceedings and the Commitment Letter. |
|---|---|
| Maturity Date | The earliest of:<br>• June 30, 2026;<br>• the effective date of (a) the sale of all or substantially all of the assets, property or business of any of the Borrowers or (b) a Plan of Arrangement;<br>• the consummation of a transaction pursuant to the SISP;<br>• the termination of the CCAA Proceedings, the appointment of a receiver, the bankruptcy of one or more of the Loan Parties, or any similar or other types of liquidation proceeding in respect of any one or more of the Loan Parties in Colombia under Colombian law; or<br>• the occurrence of an Event of Default |
| Security | • The DIP Lenders' Charge<br>• The US DIP Approval Recognition Order;<br>• The Colombian Recognition Order; and<br>• The Colombian DIP Security Process. |

12. The terms of the DIP Financing expressly require entry of an order from this Court recognizing and enforcing the SARIO (i.e., the DIP Approval Order as referenced in the table above) by December 19, 2025.

13. Finally, in paragraph 55 of the SARIO, the Canadian Court requests the Court's aid and recognition in carrying out its terms:

> This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in any foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist

the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

## III.

## RELIEF REQUESTED

14.     By this Motion, the Foreign Representative seeks entry of the Proposed Order: (a) recognizing and enforcing the terms, conditions, and provisions of the SARIO, including the DIP Financing anticipated to be approved by the Canadian Court pursuant to the SARIO; and (b) granting such other and further relief as the Court deems just and proper.

## IV.

## BASIS FOR RELIEF

15.     The Foreign Representative respectfully submits that the relief requested herein is warranted as "additional assistance" under section 1507 of the Bankruptcy Code. 11 U.S.C. § 1507; *Vitro SAB de CV*, 701 F.3d at 1057 (explaining that section 1507's "broad grant of assistance is intended to be a catch-all"); *see also* H.R. Rep. No. 109-31, pt. 1, at 109 (2005) (noting that section 1507 authorizes "additional relief" beyond that available under section 1521 of the Bankruptcy Code).  In addition, with limited exceptions not applicable here, "where necessary to effectuate the purpose of [chapter 15]," section 1521(a)(7) of the Bankruptcy Code provides that the Bankruptcy Court may, upon recognition of a foreign proceeding, authorize "any additional relief that may be available to a trustee," provided that the Court determines that doing so is necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors. 11 U.S.C. § 1521(a).

16.     Furthermore, sections § 1525 and 1527 of the Bankruptcy Code, when read in conjunction, direct this Court "to cooperate to the maximum extent possible" with the Canadian

Court regarding "the coordination of the administration and supervision" of the Debtors' assets and affairs. 11 U.S.C. §§ 1525, 1527(3).

17. In determining whether to exercise its discretion to grant additional relief under section 1507(a), the Court's analysis should be guided by the principle of comity. *See* 11 U.S.C. § 1507(b). Additionally, section 1507(b) of the Bankruptcy Code, in relevant part, directs the court to consider "whether such additional assistance, consistent with the principles of comity, will reasonably assure" the:

> (1) just treatment of all holders of claims against or interests in the debtor's property;
>
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3) prevention of preferential or fraudulent dispositions of property of the debtor;
>
> (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
>
> (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concern.

11 U.S.C. § 1507(b).

18. Recognition and enforcement of the SARIO is available under section 1507 of the Bankruptcy Code, as all applicable factors are satisfied. First, reasonable assurance of "just treatment of all holders of claims" is met when "foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding." *In re Oi S.A.*, 587 B.R. 253, 267 (Bankr. S.D.N.Y. 2018).

19. Second, requiring reasonable assurance of the "protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding" is satisfied where "creditors are given adequate notice of the timing and procedures

for filing claims, and such procedures do not create additional procedures for a foreign creditor seeking to file a claim." *Oi S.A.*, 587 B.R. at 268. The Debtors' creditors and parties in interest have been treated fairly in the Debtors' obtaining the SARIO. Such parties have been provided proper and sufficient notice of, and had the opportunity to raise any objections to, the substantive relief requested in the SARIO. Accordingly, the second factor in the section 1507(b) analysis is satisfied.

20. Third, section 1507(b) requires that the additional assistance reasonably assure "prevention of preferential or fraudulent dispositions of property of the debtor." 11 U.S.C. § 1507(b)(3). Preferential or fraudulent transfers are not permitted under the CCAA, which provides for the recovery of such transfers. CCAA § 36.1(1) (incorporating by reference sections 38, 95, and § 101 of Canada's Bankruptcy and Insolvency Act, which allows for preferential or undervalued transactions made by a debtor to be set aside). Moreover, the purpose of the SARIO is to ensure that the Debtors have the liquidity necessary to maintain their operations while they explore their restructuring options. Accordingly, the third factor in the section 1507(b) analysis is satisfied, given the CCAA's prohibition against preferential and/or fraudulent transfers.

21. Fourth, the SARIO is not a plan of arrangement effecting a distribution of proceeds of the debtor's property, thus that factor is inapplicable here.

22. Finally, the fifth element is similarly inapplicable as the Debtors are not individuals.

23. To maintain sufficient operating liquidity and fund the administrative costs associated with the Canadian Proceeding and these Chapter 15 Cases while operating in the ordinary course of business, the Debtors have made a good-faith business decision, after extensive arm's-length negotiations, to enter into the DIP Financing with the DIP Lenders.

24. The DIP Financing and the DIP Lenders' Charge, which are expected to be approved by the SARIO, along with the solicitation process followed by the Canacol Group in Canada (with the assistance of the Monitor and Plexus), all generally align with the U.S. process for obtaining debtor-in-possession financing. If the SARIO is granted, it will be granted on notice to creditors, upon the Canadian Court reviewing the DIP Financing, holding a hearing, and approving the DIP Financing and DIP Lenders' Charge. By granting the relief requested herein, the Court would allow the Canacol Group (including the Debtors) to continue their restructuring efforts, which certainly fulfills the requirements of section 1521(a)(7).[5]

25. Moreover, the DIP Lenders have conditioned availability under the DIP Financing upon this Court's entry of an order recognizing and enforcing the terms of the SARIO, including the DIP Financing and the DIP Lenders' Charge, in the United States.

26. The Debtors submit they have fulfilled the requirements of sections 1507(b) and 1522(a). The interests of creditors and other interested entities – including the Debtors – are sufficiently protected. All parties will benefit from the increased liquidity the DIP Financing provides. Absent access to the DIP Financing approved by the Canadian Court, the Debtors will not have sufficient liquidity to operate their businesses and could face a shuttering of certain or all of their operations. The availability to the Debtors of sufficient working capital and liquidity through the incurrence of new indebtedness and other financial accommodations from the DIP Lenders is necessary to bolster the confidence of the Debtors' vendors and suppliers of other goods and services, as well as their customers and employees. Lack of liquidity, or perceived lack of liquidity, could thus quickly result in administrative insolvency and a significantly diminished

---

[5] The Foreign Representative expects that the Court will have entered an order recognizing the Petitions prior to the hearing on this Motion. To the extent such order is delayed, the Foreign Representative seeks substantially the same relief pursuant to section 1519 of the Bankruptcy Code.

recovery for all of the Debtors' creditors. Indeed, the preservation and maintenance of the going concern value of the Debtors' business is dependent on access to the DIP Financing, which is anticipated to be approved by the Canadian Court in the Canadian Proceeding prior to the hearing on this Motion. Moreover, and importantly, the value of the Canacol Group's assets well exceed any asserted existing liens. As noted in the Second Report, the Monitor understands that as of September 30, 2025, the Canacol Group reported total assets with a net book value of approximately $1.3 billion and total liabilities with a net book value of $900 million. As of the date of the Initial Order, the Monitor understands the amount outstanding under the debt owed to Macquarie Bank Ltd., the Canacol Group's sole secured creditor, is approximately $38 million.

27.     By expressly recognizing and enforcing the SARIO entered by the Canadian Court, including the DIP Financing and the DIP Lenders' Charge in the U.S., as mandated by the DIP Lenders, the Court will enable the Debtors to continue their restructuring efforts. The Debtors also respectfully submit that the Court should take comfort from the transparency of the debtor-in-possession financing process followed in the Canadian Proceeding. As demonstrated by the Bednar Declaration, the Second Report, and if granted, the SARIO, the Canacol Group and the Canadian Court abided by a rigorous protocol in seeking approval of the DIP Financing and the DIP Lenders' Charge.

28.     Recognition and enforcement of the SARIO, as requested by the Canadian Court, will ensure preservation of the Debtors' enterprise value while they evaluate their restructuring path forward. Absent such recognition and enforcement, the Debtors are unlikely to succeed in their efforts, to the detriment of all parties in interest.

## V.

## CONCLUSION

29. The Foreign Representative respectfully submits that SARIO, including approval of the DIP Financing and DIP Lenders' Charge, should be recognized and enforced in the United States and further requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein.

## VI.

## NOTICE

30. The Foreign Representative will provide notice of this Motion to parties on the Master Service List (as defined in the *Foreign Representative's Motion for Order Scheduling Recognition Hearing and Specifying the Form and Manner of Service of Notice* [Docket No. 10]), including all parties asserting liens on the Debtors' Property. Copies of the Motion, the Bednar Declaration, the Second Report, as well as pleadings filed in the Canadian Proceeding are available free of charge on the Monitor's case website: https://kpmg.com/ca/canacol. The Foreign Representative submits that such notice is sufficient and no other or further notice need be provided.

## VII.

## NO PRIOR REQUEST

31. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

| | |
|---|---|
| Dated: December 9, 2025 | PACHULSKI STANG ZIEHL & JONES LLP |
| | */s/ Laura Davis Jones* |
| | Laura Davis Jones (*admitted pro hac vice*) |
| | Steven W. Golden |
| | Mary F. Caloway (*admitted pro hac vice*) |
| | 1700 Broadway, 36th Floor |
| | New York, New York 10019 |
| | Telephone: 212-561-7700 |
| | Facsimile: 212-561-7777 |
| | |
| | *Counsel to the Foreign Representative* |