## EXHIBIT 2

**Blackline**

**Order**
**Rule 9.1**

| | |
|---|---|
| COURT FILE NO.: | 2501-18462 |
| COURT | COURT OF KING'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | CALGARY |
| | IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, RSC 1985, c C-36, as amended |
| | AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CANACOL ENERGY LTD., 2654044 ALBERTA LTD., CANACOL ENERGY ULC, 2498003 ALBERTA ULC, CANTANA ENERGY GMBH, CNE OIL & GAS S.R.L, CANACOL ENERGY COLOMBIA S.A.S., SHONA HOLDING GMBH, CNE ENERGY S.A.S., and CNE OIL & GAS S.A.S |
| APPLICANTS(S) | CANACOL ENERGY LTD., 2654044 ALBERTA LTD., CANACOL ENERGY ULC, 2498003 ALBERTA ULC, CANTANA ENERGY GMBH, CNE OIL & GAS S.R.L, CANACOL ENERGY COLOMBIA S.A.S., SHONA HOLDING GMBH, CNE ENERGY S.A.S., and CNE OIL & GAS S.A.S. |
| DOCUMENT | <u>**SECOND AMENDED AND RESTATED CCAA INITIAL ORDER**</u> |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | Gowling WLG (Canada) LLP 1600, 421 – 7th Avenue S.W. Calgary, AB T2P 4K9 Telephone (403) 298-1946 / (416) 862-3509 / (403) 298-1976 Facsimile (403) 263-9193 **Attention: Clifton Prophet / Sam Gabor / Katherine Yurkovich** Email: clifton.prophet@gowlingwlg.com / sam.gabor@gowlingwlg.com / katie.yurkovich@gowlingwlg.com File No. G10088627 |
| **DATE ON WHICH ORDER WAS PRONOUNCED:** | December ~~10~~11, 2025 |
| **LOCATION AT WHICH ORDER WAS MADE:** | Edmonton Courts Centre |
| **NAME OF JUSTICE WHO MADE THIS** | The Honourable Justice D. Mah |

**ORDER:**

---

**WHERE UPON** the application of Canacol Energy Ltd., 2654044 Alberta Ltd., Canacol Energy ULC, 2498003 Alberta ULC, Cantana Energy GMBH, CNE Oil & Gas S.R.L, Canacol Energy Colombia S.A.S., Shona Holding GMBH, CNE Energy S.A.S., and CNE Oil & Gas S.A.S. (collectively, the "**Applicants**"); **AND UPON** having read the Originating Application, the Affidavit of Jason Bednar affirmed November 16, 2025 (the "**Bednar Affidavit**"), the Affidavit of Jason Bednar affirmed November 22, 2025, the Affidavit of Michael Hibberd affirmed November 25, 2025, and the Affidavit of Jason Bednar affirmed December 5, 2025, the Affidavit of Jason Bednar affirmed December 8, 2025, and the Affidavit of Jason Bednar affirmed December 9, 2025; **AND UPON** reviewing the Initial Order granted by the Honourable Justice B. B. Johnston in these proceedings on November 18, 2025; **AND UPON** reviewing the Amended and Restated Initial Order granted by the Honourable Justice Bourque on November 28, 2025; **AND UPON** hearing from counsel for the Applicants, counsel for KPMG Inc. in its capacity as the court-appointed monitor in these proceedings (the "**Monitor**") and counsel for any other party in attendance; **AND UPON** reading the Pre-Filing Report of KPMG Inc. in its capacity as the proposed Monitor (the "**Proposed Monitor**") dated November 17, 2025 (the "**Pre-Filing Report**"), the First Report of the Monitor dated November 24, 2025 ("**First Report**") and the Second Report of the Monitor dated December 9, 2025 ("**Second Report**"); **AND UPON** reviewing the Affidavit of Service of Arriane Tano sworn December 9, 2025, and being advised that the secured creditors who are likely to be affected by the charges created herein have been provided notice of this application; **AND UPON** the application being heard on December 10, 2025; **IT IS HEREBY ORDERED AND DECLARED THAT**:

**SERVICE**

1.    The time for service of the notice of application for this order (the "**Order**") is hereby abridged and deemed good and sufficient and this application is properly returnable today.

**REFERENCES TO DOLLARS**

2.    Unless otherwise stated, all references to dollars or $ herein are to Canadian dollars.

**APPLICATION**

3.    Each of the Applicants is a company to which the *Companies' Creditors Arrangement Act* of Canada (the "**CCAA**") applies.

**PLAN OF ARRANGEMENT**

4.      The Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

5.      The Applicants shall:

(a)     remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof and all assets, undertakings and rights that are owned, held, controlled, administered, registered, or recorded in the name of any branch/sucursal of an Applicant in Colombia (the "**Property**");

(b)     subject to further order of this Court, continue to carry on business in a manner consistent with the preservation of its business (the "**Business**") and Property;

(c)     be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by it, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order; and

(d)     subject to the terms of the Definitive Documents (as defined below), be entitled to continue to utilize the central cash management system currently in place as described in the Bednar Affidavit or, with the consent of the Interim Lender, replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

9170590791761901\1

6.      To the extent permitted by law and subject to the terms of the Definitive Documents, the Applicants shall be entitled but not required to make the following advances or payments of the following expenses, incurred prior to or after this Order:

(a)     all outstanding and future wages, salaries, employee and pension benefits, vacation pay and expenses payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)     the reasonable fees and disbursements of any Assistants retained or employed by the Applicants in respect of these proceedings, at their standard rates and charges, including for periods prior to the date of this Order;

(c)     obligations and expenses owing for goods and services supplied to the Applicants prior to the date of this Order by vendors, suppliers and governmental authorities, deemed by the Applicants to be critical to the extent required to ensure ongoing supply of critical goods and services, as permitted by the Initial Order, subject to prior approval by the Monitor and the Interim Lender, up to a maximum amount of the Canadian dollar equivalent of USD$15,500,000; and

(d)     payments required to be made for royalties arising prior to the date of this Order in the amount of USD$1,807,000 for the month of September, 2025, and further amounts owing for the month of October, 2025 and the period of November 1, 2025 to November 18, 2025, to the Agencia Nacional de Hidrocarburos ("**ANH**") (the National Hydrocarbon Agency) or other governmental and/or regulatory authorities in Colombia to preserve and maintain exploration and production contracts and exploration and exploitation contracts of the Applicants, including, without limitation, royalties and work commitments required to be paid thereunder;

(e)     post cash collateral by one or more Applicants not subject to the order of the Chamber of Commerce of Bogotá pursuant to the Company Recovery Process dated November 28, 2025, in the approximate amount of USD$5,200,000 to a bank account(s) of such Applicant(s) in Canada or the United States, or transfer such funds into escrow or trust, or make such other arrangements as acceptable to an issuer of a monetary instrument ("**Monetary Instrument**"), the Applicants, Interim Lender, and the Monitor, as security for the issuer of a Monetary instrument to issue a Monetary Instrument for the benefit of a Colombian bank, which Monetary Instrument may secure a letter of credit issued from a Colombian bank to the ANH as security for CNE Oil & Gas S.A.S' obligations to ANH.

917059079176190111

7.      Except as otherwise provided to the contrary herein and subject to the terms of the Definitive Documents, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course after this Order and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)      all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

(b)      payment for goods or services actually supplied to the Applicants following the date of this Order.

8.      The Applicants shall remit, in accordance with legal requirements, or pay:

(a)      any statutory deemed trust amounts in favour of the Crown in Right of Canada or of any Province thereof or any other taxation authority that are required to be deducted from employees' wages, including, without limitation, amounts in respect of:

(i)      employment insurance,

(ii)      Canada Pension Plan,

(iii)      Quebec Pension Plan, and

(iv)      income taxes,

but only where such statutory deemed trust amounts arise after the date of this Order, or are not required to be remitted until after the date of this Order, unless otherwise ordered by the Court;

(b)      all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order;

(c)      any amount payable to the Crown in Right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and that are attributable to or in respect of the carrying on of the Business by the Applicants; and

9170590791761901\1

(d)  any amounts payable to Colombian taxation authority(ies) in respect of, including without limitation, regional, municipal and national withholding taxes and value-added taxes, which are entitled at law to be paid in priority to claims of secured creditors and that are attributable to or in respect of the carrying on of the Business by the Applicants.

9.  Until such time as a real property lease is disclaimed or resiliated in accordance with the CCAA, the Applicants may, subject to the terms of the Definitive Documents, pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated by the Applicants from time to time for the period commencing from and including the date of this Order ("**Rent**"), but shall not pay any rent in arrears.

10.  Except as specifically permitted in this Order and the Definitive Documents, the Applicants are hereby directed, until further order of this Court:

(a)  to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Applicants to any of its creditors as of the date of this Order;

(b)  to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of its Property; and

(c)  not to grant credit or incur liabilities except in the ordinary course of the Business.

**RESTRUCTURING**

11.  The Applicants shall, subject to such requirements as are imposed by the CCAA and subject to the terms of the Definitive Documents, have the right to:

(a)  permanently or temporarily cease, downsize or shut down any portion of its business or operations and to dispose of redundant or non-material assets not exceeding the Canadian dollar equivalent of USD$250,000 in any one transaction or the Canadian dollar equivalent of USD$1,000,000 in the aggregate, provided that any sale that is either (i) in excess of the above thresholds, or (ii) in favour of a person related to the Applicants (within the meaning of section 36(5) of the CCAA), shall require authorization by this Court in accordance with section 36 of the CCAA;

(b)  terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate on such terms as may be agreed upon between the

Applicants and such employee, or failing such agreement, to deal with the consequences thereof in the Plan;

(c)    disclaim or resiliate, in whole or in part, with the prior consent of the Monitor (as defined below) or further Order of the Court, their arrangements or agreements of any nature whatsoever with whomsoever, whether oral or written, as the Applicants deem appropriate, in accordance with section 32 of the CCAA; and

(d)    pursue all avenues of refinancing of their Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "**Restructuring**").

12.    The Applicants shall provide each of the relevant landlords with notice of the Applicants' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal. If the landlord disputes the Applicants' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicants, or by further order of this Court upon application by the Applicants on at least two (2) days' notice to such landlord and any such secured creditors. If the Applicants disclaim or resiliate the lease governing such leased premises in accordance with section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any such dispute other than Rent payable for the notice period provided for in section 32(5) of the CCAA, and the disclaimer or resiliation of the lease shall be without prejudice to the Applicants' claim to the fixtures in dispute.

13.    If a notice of disclaimer or resiliation is delivered pursuant to section 32 of the CCAA, then:

(a)    during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice; and

(b)    at the effective time of the disclaimer or resiliation, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises and such landlord shall be entitled to notify the Applicants of the basis on which it is taking possession and to gain possession of and re-lease such leased premises to any third

party or parties on such terms as such landlord considers advisable, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

## NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY

14. Until and including February 6, 2026, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the applicable Applicant and Monitor or leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court.

## NO EXERCISE OF RIGHTS OR REMEDIES

15. During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**"), whether judicial or extra-judicial, statutory or non-statutory against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended and shall not be commenced, proceeded with or continued except with the written consent of the applicable Applicant and the Monitor or leave of this Court, provided that nothing in this Order shall:

    (a) empower the Applicants to carry on any business that the Applicants are not lawfully entitled to carry on;

    (b) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by section 11.1 of the CCAA;

    (c) prevent the filing of any registration to preserve or perfect a security interest;

    (d) prevent the registration of a claim for lien; or

    (e) exempt the Applicants from compliance with statutory or regulatory provisions relating to health, safety or the environment.

16. Nothing in this Order shall prevent any party from taking an action against the Applicants where such an action must be taken in order to comply with statutory time limitations in order to preserve their rights at law, provided that no further steps shall be taken by such party except in accordance with the

9170590791761901\1

other provisions of this Order, and notice in writing of such action be given to the Applicants and Monitor at the first available opportunity.

17.    Nothing in this Order shall prevent any party that is, or is an affiliate of, a lender under the Applicants' prepetition revolving credit facility and has a security interest over cash collateral, provided that such security was granted by one or more Applicants to secure one or more letters of credit issued by such party prior to or, solely to the extent permitted by the Definitive Documents or consented to in writing by the Interim Lender (which may be communicated via email by counsel to the Interim Lender), after the date of this Order (all such security interests over cash collateral, the "**LC Collateral**"), from enforcing its rights and remedies in respect of such LC Collateral in the event that an applicable letter of credit is drawn.

**NO INTERFERENCE WITH RIGHTS**

18.    ~~17.~~During the Stay Period, no person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the applicable Applicant and the Monitor, or leave of this Court.

**CONTINUATION OF SERVICES**

19.    ~~18.~~During the Stay Period, all persons having:

    (a)    statutory or regulatory mandates for the supply of goods and/or services; or

    (b)    oral or written agreements or arrangements with the Applicants, including without limitation all computer software, communication and other data services, centralized banking services, cash management services, payroll and benefit services, insurance, transportation, services, utility or other services to the Business or the Applicants

are hereby restrained until further order of this Court from discontinuing, altering, interfering with, suspending or terminating the supply of such goods or services as may be required by the Applicants or exercising any other remedy provided under such agreements or arrangements. The Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the usual prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with the payment practices of the Applicants, or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

20.    ~~19.~~ Nothing in this Order has the effect of prohibiting a person from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

21.    ~~20.~~ During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA and paragraph 16 of this Order, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date of this Order and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

22.    ~~21.~~ The Applicants shall indemnify their directors and officers against obligations and liabilities that they may incur as directors and or officers of the Applicants after the commencement of the within proceedings except to the extent that, with respect to any officer or director, the obligation was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

23.    ~~22.~~ The directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount to the Canadian dollar equivalent of USD$1,000,000, as security for the indemnity provided in paragraph 21 of this Order. The Directors' Charge shall have the priority set out in paragraphs 38 and 40 hereof.

24.    ~~23.~~ Notwithstanding any language in any applicable insurance policy to the contrary:

   (a)    no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge; and

   (b)    the Applicants' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance

policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 21 of this Order. For certainty, the Applicants' directors and officers shall be entitled to the benefit of the Directors' Charge to pay the deductible for any claim covered by the Applicants' directors' and officers' insurance policy.

**APPOINTMENT OF MONITOR**

25.    24. KPMG Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the Property, Business, and financial affairs and the Applicants with the powers and obligations set out in the CCAA or set forth herein and that the Applicants and its shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

26.    25. The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)    monitor the Applicants' receipts and disbursements, Business and dealings with the Property;

(b)    report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein and immediately report to the Court if in the opinion of the Monitor there is a material adverse change in the financial circumstances of the Applicants;

(c)    assist the Applicants, to the extent required by the Applicants, in their dissemination to the Interim Lender and their advisors of financial and other information in accordance with the Definitive Documents;

(d)    advise the Applicants in its preparation of the Applicants' cash flow statements and other reporting required by the Interim Lender, which information shall be reviewed with the Monitor and delivered to the Interim Lender and advisors in accordance with the Definitive Documents;

(e)    advise the Applicants in their development of the Plan and any amendments to the Plan;

(f)    assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g)   have full and complete access to the Property, including the premises, books, records, data, including data in electronic form and other financial documents of the Applicants to the extent that is necessary to adequately assess the Property, Business, and financial affairs of the Applicants or to perform its duties arising under this Order;

(h)   be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(i)   hold funds in trust or in escrow, to the extent required, to facilitate settlements between the Applicants and any other Person; and

(j)   perform such other duties as are required by this Order or by this Court from time to time.

27.   26. The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintain possession or control of the Business or Property, or any part thereof. Nothing in this Order shall require the Monitor to occupy or to take control, care, charge, possession or management of any of the Property that might be environmentally contaminated, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal or waste or other contamination, provided however that this Order does not exempt the Monitor from any duty to report or make disclosure imposed by applicable environmental legislation or regulation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order be deemed to be in possession of any of the Property within the meaning of any federal or provincial environmental legislation.

28.   27. The Monitor shall provide any creditor of the Applicants and the Interim Lender with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants are confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

29.   28. In addition to the rights and protections afforded the Monitor under the CCAA or as an Officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

30.   29. The Monitor, counsel to the Monitor, and counsel to the Applicants shall be paid their reasonable fees and disbursements (including any pre-filing fees and disbursements related to these CCAA proceedings), in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings. The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor and counsel for the Applicants on a weekly basis and, in addition, the Applicants are hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Applicants, retainers in the amounts set out in their respective engagement letters or arrangements, to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

31.   30. The Monitor and its legal counsel shall pass their accounts from time to time.

32.   31. The Monitor, counsel to the Monitor, if any, and the Applicants' counsel, as security for the professional fees and disbursements incurred both before and after the granting of this Order, shall be entitled to the benefits of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of the Canadian dollar equivalent of USD$1,500,000, as security for their professional fees and disbursements incurred at the normal rates and charges of the Monitor and such counsel, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 38 and 40 hereof.

**INTERIM FINANCING**

33.   32. The Applicants are hereby authorized and empowered to obtain and borrow or guarantee, as applicable, pursuant to a credit facility from each of the Lenders to the Commitment Letter (as defined below) (such lenders and if a DIP Agent is appointed, the DIP Agent, collectively, the "**Interim Lender**") in order to finance the Applicants' working capital requirements and other general corporate purposes and capital expenditures, all in accordance with the Cash Flow Forecast (as defined in the Commitment letter) and the Commitment Letter, provided that borrowings of principal amounts under

- 14 -

such credit facility shall not exceed the Canadian dollar equivalent of USD\$67,000,000 unless permitted by further order of this Court.

34.   ~~33.~~ Such credit facility shall be on the terms and subject to the conditions set forth in the commitment letter between the Applicants and the Interim Lender dated as of December 5, 2025 and attached as Exhibit "K" to the Affidavit of Jason Bednar affirmed December 5, 2025 (as may be amended or amended and restated from time to time, including without limitation as a result of any new parties joining as lenders thereunder, the "**Commitment Letter**").

35.   ~~34.~~ The Applicants are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs, and security documents, guarantees and other definitive documents (collectively with the Commitment Letter and Cash Flow Forecast, the "**Definitive Documents**"), as are contemplated by the Commitment Letter or as may be reasonably required by the Interim Lender pursuant to the terms thereof, and the Applicants are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities, and obligations as required under and pursuant to the Commitment Letter and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order. Notwithstanding any other provision in this Order, all payments and other expenditures to be made by any of the Applicants to any Person shall be in accordance with the Definitive Documents.

36.   ~~35.~~ The Interim Lender shall be entitled to the benefits of and is hereby granted a charge (the "**Interim Lender's Charge**") on the Property to secure all obligations under the Definitive Documents incurred on or after the date of this Order which charge shall not secure an obligation that exists before this Order is made. The Interim Lender's Charge shall have the priority set out in paragraphs 38 and 40 hereof.

37.   ~~36.~~ Notwithstanding any other provision of this Order:

(a)   the Interim Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the Interim Lender's Charge or any of the Definitive Documents;

(b)   upon the occurrence of an event of default under the Definitive Documents or the Interim Lender's Charge, the Interim Lender may immediately cease making advances or providing any credit to the Applicants and shall be permitted to set off and/or consolidate any amounts owing by the Interim Lender to the Applicants against the obligations of the Applicants to the Interim Lender under the Definitive Documents or the Interim Lender's Charge, make demand,

accelerate payment and give other notices with respect to the obligations of the Applicants to the Interim Lender under the Definitive Documents or the Interim Lender's Charge, or to apply to this Court on three (3) days' notice to the Applicants, the Monitor and the Service List to seek the Court's authorization to exercise any and all of its other rights and remedies against the Applicants or the Property under or pursuant to the Definitive Documents and the Interim Lender's Charge, including without limitation, for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Applicants and for the appointment of a trustee in bankruptcy of the Applicants; and

(c)     the foregoing rights and remedies of the Interim Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Applicants or the Property.

38.    ~~37.~~ The Interim Lender shall be treated as unaffected in any plan of arrangement or compromise filed by the Applicants or any of them under the CCAA, or any proposal filed by the Applicants or any of them under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any obligations under the the the Definitive Documents.

## VALIDITY AND PRIORITY OF CHARGES

39.    ~~38.~~ The priorities of the Administration Charge, the Directors' Charge and the Interim Lender's Charge, as among them, shall be as follows:

First – Administration Charge (to the maximum amount of USD\$1,500,000);

Second – Interim Lender's Charge (to the maximum amount of the Obligations (as defined in the Commitment Letter) owing thereunder at the relevant time); and

Third – Directors' Charge (to the maximum amount of USD\$1,000,000).

40.    ~~39.~~ The filing, registration or perfection of the Directors' Charge, Interim Lender's Charge or the Administration Charge (collectively the "**Charges**") shall not be required, and the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

41.    ~~40.~~ The ~~Director's Charge, Interim Lender's Charge, and Administration Charge~~ Charges (all as constituted and defined herein) shall each constitute a charge on the Property and subject always to

section 34(11) of the CCAA such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person, save and except for the LC Collateral, with respect to which the Charges shall be subordinate.

42. 41. Except as otherwise expressly provided for herein, or as may be approved by this Court on notice to parties in interest, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges, unless the Applicants also obtain the prior written consent of the Monitor, the Interim Lender and the beneficiaries of the Charges (as applicable), or further order of this Court.

43. 42. The Charges, the agreements and other documents governing or otherwise relating to the obligations secured by the Charges, and the Definitive Documents shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (the "**Chargees**") and/or the Interim Lender thereunder shall not otherwise be limited or impaired in any way by:

(a)    the pendency of these proceedings and the declarations of insolvency made in this Order;

(b)    any application(s) for bankruptcy order(s) issued pursuant to *Bankruptcy and Insolvency Act*, RSC 1985 c B-3, as amended (the "**BIA**"), or any bankruptcy order made pursuant to such applications;

(c)    the filing of any assignments for the general benefit of creditors made pursuant to the BIA;

(d)    the provisions of any federal or provincial statutes; or

(e)    any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") that binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(i)    neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of any documents in respect thereof shall create or be deemed to constitute a new breach by the Applicants of any Agreement to which it is a party;

(ii)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Applicants entering into Commitment Letter, the creation of the Charges or the execution, delivery or performance of any of the other Definitive Documents; and

9170590791761901\1

(iii)    the payments made by the Applicants pursuant to this Order or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct or other challengeable or voidable transactions under any applicable law.

## ALLOCATION

44. 43. Any interested Person may apply to this Court on notice to any other party likely to be affected for an order to allocate the Charges amongst the various assets comprising the Property.

## SERVICE AND NOTICE

45. 44. The Monitor shall (i) without delay, publish in the Globe and Mail (National Edition) a notice containing the information prescribed under the CCAA; (ii) within five (5) days after the date of this Order (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Applicants of more than $1,000 and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with section 23(1)(a) of the CCAA and the regulations made thereunder.

46. 45. The Monitor shall establish a case website in respect of the within proceedings at the following URL 'https://kpmg.com/ca/canacol' (the "**Case Website**").

47. 46. The Applicants, the Monitor and the Interim Lender and their respective counsel are at liberty to serve this Order, any other materials and orders in these proceedings, and any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the Applicants and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing. Any person that wishes to be served with any application and other materials in these proceedings must deliver to the Applicants, the Monitor and the Interim Lender by way of ordinary mail, courier, or electronic transmission, a request to be added to the service list (the "**Service List**") to be maintained by the Monitor.

48. 47. Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsel's email addresses as recorded on the Service

List from time to time, and the Monitor shall post a copy of all prescribed materials on the Case Website.

**FOREIGN REPRESENTATIVE**

49. ~~48.~~ The Monitor, or any officer, employee or representative of the Monitor, is hereby authorized and empowered to act as the foreign representative (in such capacity the "**Foreign Representative**") in respect of these proceedings for the purpose of having these proceedings recognized and approved in a foreign jurisdiction. The Foreign Representative is hereby authorized to apply for foreign recognition and approval of these proceedings, as necessary, in any jurisdiction outside Canada, including, without limitation, the United States of America, the Republic of Colombia, the Republic of Panama and/or Switzerland.

**RELIEF FROM REPORTING OBLIGATIONS**

50. ~~49.~~ The Applicants shall not be required to incur any further expenses for the duration of the Stay Period in relation to any filings (including financial statements), disclosures, core or non-core documents, and press releases (collectively, the "**Securities Filings**") that may be required by any law respecting securities or capital markets in Canada, or by the rules and regulations of a stock exchange, including, without limitation, the *Securities Act* (Alberta), RSA 2000, c S-4 and comparable statutes enacted by other provinces of Canada (collectively, the "**Securities Legislation**"), provided that nothing in this paragraph shall prohibit any securities regulator or stock exchange from taking any action or exercising any discretion that it may have of a nature described in section 11.1(2) of the CCAA as a consequence of the Applicants failing to make any Securities Filings required by the Securities Legislation.

51. ~~50.~~ None of the directors, officers, employees, and other representatives of the Applicants nor the Monitor shall have any personal liability for any failure by the Applicants to make any Securities Filing required by the Securities Legislation during the Stay Period, provided that nothing in this paragraph shall prohibit any securities regulator or stock exchange from taking any action or exercising any discretion that it may have of a nature described in section 11.1(2) of the CCAA as a consequence of such failure by the Applicants. For greater certainty, nothing in this Order is intended to or shall encroach on the jurisdiction of any securities regulatory authorities (the "**Regulators**") in the matter of regulating the conduct of market participants and to issue cease trade orders if and when required pursuant to applicable securities law.

**APPROVAL OF REPORTS AND ACTIVITIES OF MONITOR**

52.    ~~51.~~ The Pre-Filing Report, the First Report and the Second Report are approved, and the actions, conduct and activities of the Proposed Monitor and the Monitor (as applicable) set out therein are approved.

**GENERAL**

53.    ~~52.~~ The Applicants or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

54.    ~~53.~~ Notwithstanding Rule 6.11 of the *Alberta Rules of Court*, unless otherwise ordered by this Court, the Monitor will report to the Court from time to time, which reporting is not required to be in affidavit form and shall be considered by this Court as evidence. The Monitor's reports shall be filed by the Court Clerk notwithstanding that they do not include an original signature.

55.    ~~54.~~ Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager or a trustee in bankruptcy of the Applicants, the Business or the Property.

56.    ~~55.~~ This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in any foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

57.    ~~56.~~ Each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and that the Monitor is authorized and empowered to act as foreign representative in respect of the within proceeding for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

58.    ~~57.~~ Any interested party (including the Applicants, the Monitor or the Interim Lender) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to any other party or parties

- 20 -

likely to be affected by the order sought or upon such other notice, if any, as this Court may order; provided, however, that the Chargees, including the Interim Lender, shall be entitled to rely on this Order as issued and entered and on the Charges and priorities set out in paragraphs 38 to 42 hereof, including with respect to any fees, expenses and disbursements incurred and in respect of advances made under the Definitive Documents until the date this Order may be amended, varied or stayed.

59.    58. This Order and all of its provisions are effective as of 12:01 a.m. Mountain Standard Time on the date of this Order.

_____<br>Justice of the Court of King's Bench of Alberta

91705907 91761901\1

| Summary report: Litera Compare for Word 11.9.0.82 Document comparison done on 2025-12-11 5:41:10 PM | |
|---|---|
| **Style name:** Firm Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://gowlingwlg-ca.cloudimanage.com/ACTIVE_CA/91770765/1 | |
| **Modified DMS:** iw://gowlingwlg-ca.cloudimanage.com/ACTIVE_CA/91761901/1 | |
| **Changes:** | |
| Add | 53 |
| Delete | 47 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 100 |