Laura Davis Jones (*admitted pro hac vice*)
Steven W. Golden
Mary F. Caloway (*admitted pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile: 212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| CANACOL ENERGY LTD., *et al.*[1] | Case No. 25-12572 (DSJ) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

**FOREIGN REPRESENTATIVE'S**
**EMERGENCY MOTION FOR ORDER RECOGNIZING**
**AND ENFORCING FOURTH AMENDED AND RESTATED INITIAL ORDER**

---

[1] The Debtors, along with the last four digits of each Debtor's unique identifier, as applicable, are as follows: Canacol Energy Ltd. (2074); Cantana Energy GmbH (8873); CNE Oil & Gas S.R.L. (9803); Canacol Energy ULC (0350); Shona Holding GmbH (2126); Canacol Energy Colombia S.A.S. (5633); CNE Energy S.A.S (0691); CNE Oil & Gas S.A.S. (6580); 2498003 Alberta ULC (4611); and 2654044 Alberta Ltd. (3429). The Foreign Representative's service address for purposes of these Chapter 15 Cases is c/o KPMG Inc., Bay Adelaide Centre, Suite 4600 333 Bay Street, Toronto, Ontario, Canada M5H 2S5.

4917-9483-5105.3 42848.00001

## TABLE OF CONTENTS

**Page**

I. JURISDICTION AND VENUE ...................................................................................................2

II. BACKGROUND.......................................................................................................................2

      A.      The Debtors' Business Operations. .........................................................................2

      B.      The Canadian Proceeding and Chapter 15 Cases .....................................................3

      C.      The Third AR DIP Commitment Letter. ....................................................................5

III. RELIEF REQUESTED...........................................................................................................8

IV. BASIS FOR RELIEF .............................................................................................................8

V. CONCLUSION .......................................................................................................................12

VI. NOTICE.................................................................................................................................12

VII. NO PRIOR REQUEST ........................................................................................................13

## TABLE OF AUTHORITIES

**Page**

### CASES

*In re Oi S.A.,*
    587 B.R. 253 (Bankr. S.D.N.Y. 2018).............................................................. 10

*In re Standing Order of Reference Re: Title 11,*
    12 Misc. 00032 (S.D.N.Y Feb. 2, 2012) ........................................................ 2

*In re Vitro SAB de CV,*
    701 F.3d (5th Cir. 2012) ................................................................................ 8

### STATUTES

11 U.S.C. § 101 ..................................................................................................... 1

11 U.S.C. § 105 ................................................................................................. 1, 2

11 U.S.C. § 1507 ........................................................................................... 1, 8, 9

11 U.S.C. § 1507(a) .............................................................................................. 9

11 U.S.C. § 1507(b) ....................................................................................9, 10, 11

11 U.S.C. § 1507(b)(3) ....................................................................................... 10

11 U.S.C. § 1521(a) .............................................................................................. 9

11 U.S.C. § 1525 ............................................................................................... 1, 9

11 U.S.C. § 1527 ............................................................................................... 1, 9

11 U.S.C. § 1527(3) .............................................................................................. 9

11 U.S.C. § 1532 ................................................................................................... 1

28 U.S.C. § 1334 ................................................................................................... 2

28 U.S.C. § 1410 ................................................................................................... 2

28 U.S.C. § 157 ..................................................................................................... 2

28 U.S.C. § 157(b)(2)(P).......................................................................................2

**OTHER AUTHORITIES**

Creditors Arrangement Act,
   R.S.C. 1985, c C-36, § 36.1(1) ................................................................................. 10

Creditors Arrangement Act,
   R.S.C. 1985, c. C-36 ................................................................................................ 1

Creditors Arrangement Act,
   RSC 1985, c C-36, § 101 ....................................................................................... 10

Creditors Arrangement Act,
   RSC 1985, c C-36, § 38 ......................................................................................... 10

Creditors Arrangement Act,
   RSC 1985, c C-36, § 95 ......................................................................................... 10

H.R. Rep. No.
   109-31, pt. 1, at 109 (2005) ..................................................................................... 8

**RULES**

Fed. R. Bankr. P. 1015(b) ................................................................................................ 2

Fed. R. Bankr. P. 7008 .................................................................................................... 2

KPMG Inc., in its capacity as the court-appointed monitor (in such capacity, the "Monitor") and the authorized foreign representative (the "Foreign Representative") of the above-captioned foreign debtors (collectively, the "Debtors"), which are the subject of jointly-administered proceedings (collectively, the "Canadian Proceeding") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") before the Court of King's Bench of Alberta (the "Canadian Court"), by and through its undersigned counsel, respectfully submits this motion (the "Motion") pursuant to sections 105, 1507, 1521,  1525 and 1527 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") recognizing and enforcing the Canadian Court's *Fourth Amended and Restated Initial Order* (the "Fourth ARIO"), a draft of which is attached hereto as **Exhibit B**[2], which, among other things, (x) approves the Debtors' entry into the *Third Amended and Restated Canacol DIP Loan Commitment Letter* dated April 14, 2026 (the "Third AR DIP Commitment Letter"), (y) increases the principal amount of DIP Financing (defined below) and (z) grants various charges over the Debtors' Property (as defined in the Fourth ARIO) as set forth therein.

In support of this Motion, the Foreign Representative relies on the *Declaration of Jason Bednar in Support of Foreign Representative's Emergency Motion for Order Recognizing and Enforcing Fourth Amended and Restated Initial Order* (the "Bednar Declaration"), filed contemporaneously herewith, and the *Sixth Report of the Monitor* (the "Sixth Report"),[3] each

---

[2]   The Canadian Court will hold a hearing to consider approval of the Fourth ARIO on April 23, 2026.  The Foreign Representative will file the Fourth ARIO as entered by the Canadian Court on this Court's docket prior to the hearing on this Motion.

[3]   The Foreign Representative expects that the Sixth Report will be filed by the Monitor with the Canadian Court prior to the hearing thereon.  The Foreign Representative will file the Sixth Report with this Court as soon as practicable thereafter.

4917-9483-5105.3 42848.00001                    1

incorporated herein by reference. In further support of this Motion, the Foreign Representative respectfully represents as follows:

## I.

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as the *Amended Standing Order of Reference dated January 31, 2012, Reference M-431, In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y Feb. 2, 2012) (Preska, CJ). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). The Foreign Representative confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper under 28 U.S.C. § 1410.

3.     The statutory bases for the relief requested herein are sections 105 and 1521 of the Bankruptcy Code and Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.

## BACKGROUND

### A.     The Debtors' Business Operations.

4.     The Debtors are a highly integrated oil and natural gas enterprise engaged in the exploration, development, production, processing, and sale of oil and natural gas, primarily in the country of Colombia. The Canacol Group's Colombian natural gas production is a critical fuel

source for Colombia's electrical grid, with a majority of its gas being sold to power generators in Colombia. Canacol Energy Ltd. ("Canacol"), the direct or indirect parent of each of the other Debtors (collectively, with Canacol, the "Canacol Group"), centrally manages all corporate and treasury activities of the Debtors from the corporate head office in Calgary, Alberta, Canada.

**B.      The Canadian Proceeding and Chapter 15 Cases**

5.      On November 17, 2025, the Debtors filed materials to commence the Canadian Proceeding pursuant to the CCAA to, among other things, provide the breathing space and stability necessary to continue operations and preserve the Canacol Group's enterprise value. On November 18, 2025, the Canadian Court entered an interim order (the "Initial CCAA Order") in the Canadian Proceeding. Among other things, the Initial CCAA Order provided for (i) the appointment of KPMG as Monitor; (ii) a stay of proceedings against the Debtors in Canada (the "Canadian Stay"); (iii) the continued implementation of the Debtors' cash management system; (iv) authorization for the Monitor to act as the Debtors' Foreign Representative in seeking recognition of the Canadian Proceeding in this Court; and (v) granted a charge in favor of the Monitor, its counsel, and the Debtors' counsel in respect of each of their fees and expenses (the "Administration Charge").

6.      On November 18, 2025, to preserve value for all stakeholders, the Foreign Representative filed verified petitions for relief under chapter 15 of the Bankruptcy Code (the "Petitions") with this Court, thus commencing these chapter 15 cases (the "Chapter 15 Cases"). Contemporaneously with filing the Petitions, the Foreign Representative filed motions seeking provisional relief [Docket No. 7] (the "Provisional Relief Motion") and recognition of the Canadian Proceeding as a foreign main proceeding as to each Debtor [Docket No. 8] (the "Recognition Motion"). On November 20, 2025, this Court entered the *Order Granting*

*Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [Docket No. 25], granting the relief sought in the Provisional Relief Motion.

7. Following a "comeback hearing" on November 26, 2025, the Canadian Court entered an amended and restated Initial CCAA Order (the "ARIO")[4] extending the Canadian Stay and granting certain other relief.

8. On December 11, 2025, this Court entered the *Order Granting Motion for (I) Recognition of Foreign Main Proceeding (or, in the Alternative, Foreign Nonmain Proceeding), (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 43] (the "Recognition Order"), granting the relief sought by the Foreign Representative in the Recognition Motion, including the recognition of the Canadian Proceeding as a foreign main proceeding as to each Debtor.

9. On December 10, 2025, the Debtors filed an amended application with the Canadian Court, seeking the entry of a further amended and restated Initial CCAA Order that, among other things (a) authorized the Debtors to obtain debtor-in-possession financing and borrow up to the maximum aggregate principal amount of US$67,000,000 (the "DIP Financing") pursuant to that certain *Canacol DIP Loan Commitment Letter* dated December 2, 2025 (the "DIP Commitment Letter") between the Debtors, the guarantor parties thereto, and the lender signatories thereto (the "DIP Lenders") who are holders of Canacol's US$495,000,000 of 5.75% senior unsecured notes due in 2028 and participants in an ad hoc committee of the senior unsecured notes (the "Ad Hoc Committee"), and (b) granted a corresponding charge (the "DIP Lenders' Charge") over the Debtors' property in favor of the DIP Lenders up to the maximum amount of all amounts due and owing under the DIP Commitment Letter from time to time. The Foreign Representative

---

[4] The ARIO was filed with this Court as Exhibit A to Docket No. 28.

filed an emergency motion [Docket No. 35] with this Court to recognize such order, when entered, on December 11, 2025.

10.     On December 12, 2025, the Canadian Court granted the relief sought in such application through entry of the *Second Amended and Restated CCAA Initial Order* (the "SARIO").   On December 18, 2025, this Court entered the *Order Granting Foreign Representative's Emergency Motion for Order Recognizing and Enforcing Second Amended and Restated Initial Order Including DIP Financing Authorized Thereunder* [Docket No. 58] (the "SARIO Recognition Order").   On March 26, 2026, the Canadian Court granted an order (the "TARIO") approving, *nunc pro tunc*, the entry into the second amended and restated DIP commitment letter dated March 9, 2026 between the Debtors, the guarantor parties thereto and the DIP Lenders (the "Second AR DIP Commitment Letter").[5]

11.     On January 26, 2026, the Canadian Court granted an order (the "SISP Approval Order") that, among other things, (i) approved the sale and investment solicitation process (the "SISP") to be conducted through the Canadian Proceeding; and (ii) approved the Debtors' engagement of Moelis & Company LLC in its capacity as sale advisor (the "Sale Advisor") to implement the SISP.

## C.     The Third AR DIP Commitment Letter

12.     As noted above, the Canadian Court approved the DIP Financing pursuant to the DIP Commitment Letter through entry of the SARIO.   The DIP Commitment Letter was subsequently amended by the parties pursuant to a first amending agreement dated December 8, 2025, and amended and restated by the parties pursuant to a first amended and restated DIP

---

[5]     Because the DIP Lenders waived the requirement, the Debtors did not seek this Court's recognition of the TARIO.

commitment letter dated January 7, 2026 (the "First AR DIP Commitment Letter") and further amended through the Second AR DIP Commitment Letter.  The terms of the First AR DIP Commitment Letter provided for, among other things, (a) a delayed draw term loan sub-facility in the maximum principal amount of US$45,000,000 (the "Tranche A Sub-Facility"), available by way of an initial advance up to the maximum amount of US$15,000,000 (the "Initial Advance"), and a single subsequent advance up to the maximum amount of US$30,000,000 (the "Subsequent Advance").  The Canacol Group requested and received the Initial Advance shortly after the Canadian Court entered the SARIO.

13.     The Second AR DIP Commitment Letter, among other things, amended the loan advance structure under the DIP Commitment Letter so that the subsequent advance of up to US$30,000,000 under the Tranche A Sub-Facility was replaced with three, staged, subsequent advances (collectively, the "Subsequent Advances"), each subject to separate timing mechanics, conditions and outside funding dates.

14.     Following the granting of the TARIO, and in accordance with the Second AR DIP Commitment Letter, the DIP Lenders advanced the Second Subsequent Advance to the Debtors on March 27, 2026 in the amount of US$15,000,000. As a result of the Second Subsequent Advance, the maximum amount of $45,000,000 under the Second AR DIP Commitment Letter has been advanced by the DIP Lenders and there is no remaining availability under the Tranche A Sub-Facility.

15.     The Second Subsequent Advance was supported by a short-term cash flow forecast (the "Short-Term Cash Flow Forecast") prepared by the Debtors, with the assistance of the Monitor, for the period from March 15, 2026 to April 18, 2026 (the "Short-Term Forecast Period").

16.     The Short-Term Cash Flow Forecast and the Monitor's Fifth Report provided that the Debtors do not have sufficient liquidity to pay post-filing obligations as they become due, including approximately US$11.43 million of remaining overdue post-filing obligations. Accordingly, an increase under the DIP Facility is required to address this cash shortfall, and fund operations and SISP-related expenses.

17.     Following receipt of the Second Subsequent Advance, the Debtors, with the assistance of the Monitor, prepared a further revised cash flow forecast (the "Revised Cash Flow Forecast") for the period from April 5, 2026 to June 27, 2026 in connection with the Canacol Group's ongoing negotiations with the DIP Lenders for additional DIP Financing. The Revised Cash Flow Forecast provides that the Debtors require additional DIP financing before April 28, 2026, to fund operations, satisfy post-filing obligations, and continue implementing the SISP, while they work towards a going concern sale or restructuring outcome that maximizes value for all of the Canacol Group's stakeholders.

18.     In light of the foregoing, the Canacol Group and the DIP Lenders, in consultation with the Monitor, negotiated the terms of the Third AR DIP Commitment Letter.  The DIP Lenders have confirmed by way of the Third AR DIP Commitment Letter that they are prepared to provide the funds required to the Canacol Group to continue operations, continue the advancement of the SISP, preserve value and enhance the prospects of a value-maximizing outcome for all stakeholders.

19.     The terms of the Third AR DIP Commitment Letter expressly require entry of an order from this Court recognizing and enforcing the Fourth ARIO by no later than three (3) business days after the entry of the Fourth ARIO (i.e. April 28, 2026, assuming the Fourth ARIO is granted by the Canadian Court on April 23, 2026).

4917-9483-5105.3 42848.00001                    7

20.     Finally, in paragraph 56 of the Fourth ARIO, the Canadian Court requests this Court's aid and recognition in carrying out its terms:

> This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in any foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

**III.**

**RELIEF REQUESTED**

21.     By this Motion, the Foreign Representative seeks entry of the Proposed Order: (a) recognizing and enforcing the terms, conditions, and provisions of the Fourth ARIO, including the approval and enforcement of the Third AR DIP Commitment Letter anticipated to be approved by the Canadian Court pursuant to the Fourth ARIO; and (b) granting such other and further relief as the Court deems just and proper.

**IV.**

**BASIS FOR RELIEF**

22.     The Foreign Representative respectfully submits that the relief requested herein is warranted as "additional assistance" under section 1507 of the Bankruptcy Code. 11 U.S.C. § 1507; *Vitro SAB de CV*, 701 F.3d at 1057 (explaining that section 1507's "broad grant of assistance is intended to be a catch-all"); *see also* H.R. Rep. No. 109-31, pt. 1, at 109 (2005) (noting that section 1507 authorizes "additional relief" beyond that available under section 1521 of the Bankruptcy Code). In addition, with limited exceptions not applicable here, "where necessary to effectuate the purpose of [chapter 15]," section 1521(a)(7) of the Bankruptcy Code provides that the Bankruptcy

Court may, upon recognition of a foreign proceeding, authorize "any additional relief that may be available to a trustee," provided that the Court determines that doing so is necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors. 11 U.S.C. § 1521(a).

23.     Furthermore, sections § 1525 and 1527 of the Bankruptcy Code, when read in conjunction, direct this Court "to cooperate to the maximum extent possible" with the Canadian Court regarding "the coordination of the administration and supervision" of the Debtors' assets and affairs. 11 U.S.C. §§ 1525, 1527(3).

24.     In determining whether to exercise its discretion to grant additional relief under section 1507(a), the Court's analysis should be guided by the principle of comity. *See* 11 U.S.C. § 1507(b). Additionally, section 1507(b) of the Bankruptcy Code, in relevant part, directs the court to consider "whether such additional assistance, consistent with the principles of comity, will reasonably assure" the:

> (1) just treatment of all holders of claims against or interests in the debtor's property;
>
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3) prevention of preferential or fraudulent dispositions of property of the debtor;
>
> (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
>
> (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concern.

11 U.S.C. § 1507(b).

25.     Recognition and enforcement of the Fourth ARIO is available under section 1507 of the Bankruptcy Code, as all applicable factors are satisfied. First, reasonable assurance of "just

treatment of all holders of claims" is met when "foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding." *In re Oi S.A.*, 587 B.R. 253, 267 (Bankr. S.D.N.Y. 2018).

26.     Second, requiring reasonable assurance of the "protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding" is satisfied where "creditors are given adequate notice of the timing and procedures for filing claims, and such procedures do not create additional procedures for a foreign creditor seeking to file a claim." *Oi S.A.*, 587 B.R. at 268. The Debtors' creditors and parties in interest have been treated fairly in the Debtors' obtaining the Fourth ARIO. Such parties have been provided proper and sufficient notice of, and had the opportunity to raise any objections to, the substantive relief requested in the Fourth ARIO. Accordingly, the second factor in the section 1507(b) analysis is satisfied.

27.     Third, section 1507(b) requires that the additional assistance reasonably assure "prevention of preferential or fraudulent dispositions of property of the debtor." 11 U.S.C. § 1507(b)(3). Preferential or fraudulent transfers are not permitted under the CCAA, which provides for the recovery of such transfers. CCAA § 36.1(1) (incorporating by reference sections 38, 95, and § 101 of Canada's Bankruptcy and Insolvency Act, which allows for preferential or undervalued transactions made by a debtor to be set aside). Moreover, the purpose of the Fourth ARIO is to ensure that the Debtors have the liquidity necessary to maintain their operations while they continue to work to restructure through the Canadian Proceeding and the SISP.  Accordingly, the third factor in the section 1507(b) analysis is satisfied, given the CCAA's prohibition against preferential and/or fraudulent transfers.

28.     Fourth, the Fourth ARIO is not a plan of arrangement effecting a distribution of proceeds of the debtor's property, thus that factor is inapplicable here.  Finally, the fifth element is similarly inapplicable as the Debtors are not individuals.

29.     To continue to maintain sufficient operating liquidity and fund the administrative costs associated with the Canadian Proceeding and these Chapter 15 Cases while operating in the ordinary course of business, the Debtors have made a good-faith business decision, with the assistance of the independent Monitor and after extensive arm's-length negotiations, to enter into the Third AR DIP Commitment Letter with the DIP Lenders.

30.     If the Fourth ARIO is granted, it will be granted on notice to creditors, upon the Canadian Court reviewing the Third AR DIP Commitment Letter, holding a hearing, and approving the Third AR DIP Commitment Letter.  By granting the relief requested herein, the Court would allow the Canacol Group (including the Debtors) to continue their restructuring efforts, which certainly fulfills the requirements of section 1521(a)(7).  Moreover, the DIP Lenders have conditioned continued availability under the DIP Financing upon this Court's entry of an order recognizing and enforcing the terms of the Fourth ARIO in the United States.

31.     The Foreign Representative submits that it has fulfilled the requirements of sections 1507(b) and 1522(a).  The interests of creditors and other interested entities – including the Debtors – are sufficiently protected.  Absent the recognition and enforcement of the Fourth ARIO in the United States, the Debtors will be in continued default under the DIP Financing and the DIP Lenders will therefore be entitled to exercise rights—all to the detriment of every other creditor and interested entity.  If the Debtors do not have access to the DIP Facility, as modified by the Third AR DIP Commitment Letter and expected to be approved by the Fourth ARIO, the Debtors will not have sufficient liquidity to operate their businesses and could face a shuttering of certain

or all of their operations.  The continued availability to the Debtors of sufficient working capital and liquidity through the DIP Facility is necessary to bolster the confidence of the Debtors' vendors and suppliers of other goods and services, as well as their customers and employees.  Moreover, such liquidity is critical to the continued SISP being conducted through the Canadian Proceeding, which is intended to lead to a value-maximizing transaction for the Debtors' assets.

32.     Recognition and enforcement of the Fourth ARIO, as requested by the Canadian Court, will ensure preservation of the Debtors' enterprise value while they continue to effectuate the SISP.  Absent such recognition and enforcement, the Debtors are unlikely to succeed in their efforts, to the detriment of all parties in interest.

## V.

## **CONCLUSION**

33.     The Foreign Representative respectfully submits that Fourth ARIO, including approval of the DIP Financing and DIP Lenders' Charge, should be recognized and enforced in the United States and further requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein.

## VI.

## **NOTICE**

34.     The Foreign Representative will provide notice of this Motion to parties on the Master Service List (as defined in the *Foreign Representative's Motion for Order Scheduling Recognition Hearing and Specifying the Form and Manner of Service of Notice* [Docket No. 10]), including all parties asserting liens on the Debtors' Property.  Copies of the Motion, the Bednar Declaration, the Sixth Report, as well as pleadings filed in the Canadian Proceeding are available free of charge on the Monitor's case website: https://kpmg.com/ca/canacol.  The Foreign

Representative submits that such notice is sufficient and no other or further notice need be provided.

## VII.

## NO PRIOR REQUEST

35.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: April 16, 2026

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Steven W. Golden*

Laura Davis Jones
Steven W. Golden
Mary F. Caloway
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile: 212-561-7777

*Counsel to the Foreign Representative*